No. 22-70001

IN THE

# United States Court of Appeals for the Fifth Circuit

RICHARD TABLER,

*Petitioner-Appellant,*

v.

BOBBY LUMPKIN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Western District of Texas, Waco Division

## BRIEF FOR RESPONDENT-APPELLEE

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

CARA HANNA
Assistant Attorney General
   *Counsel of Record*

P.O. Box 12548
Capitol Station
Austin, Texas 78711
(512) 936-1400
cara.hanna@oag.texas.gov

*Counsel for Respondent-Appellee*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*Respondent–Appellee*
    Bobby Lumpkin, Director, Correctional Institutions Division
    TEXAS DEPARTMENT OF CRIMINAL JUSTICE

*Counsel for Respondent–Appellee*
    Cara Hanna, Assistant Attorney General
    OFFICE OF THE ATTORNEY GENERAL OF TEXAS

*Petitioner–Appellant*
    Richard Tabler

*Counsel for Petitioner–Appellant*
    Marcia A. Widder
    GEORGIA RESOURCE CENTER

    Claudia Van Wyk
    AMERICAN CIVIL LIBERTIES UNION, CAPITAL PUNISHMENT PROJECT

    Peter J. Walker
    FEDERAL COMMUNITY DEFENDER OFFICE

                         s/ Cara Hanna
                         CARA AHANNA
                         Assistant Attorney General
                           *Counsel of Record*

                         *Counsel for Respondent–Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

The parties' briefs adequately lay out the facts and legal arguments, and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................ii

STATEMENT REGARDING ORAL ARGUMENT ................................. iii

TABLE OF CONTENTS ......................................................................iv

TABLE OF AUTHORITIES ................................................................ vi

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT ...................................................... 3

STATEMENT OF THE ISSUES ......................................................... 3

STATEMENT OF THE CASE ............................................................. 4

I.    Statement of Facts ........................................................................ 4

II.   Conviction and Postconviction Proceedings ................................. 5

SUMMARY OF THE ARGUMENT .................................................... 8

ARGUMENT ...................................................................................... 9

I.    Standard of Review ....................................................................... 9

II.   State Habeas Counsel Were Not Ineffective for Not
      Challenging His Competency, and Tabler Therefore Does Not
      Demonstrate Cause to Excuse Procedural Default under
      *Martinez.* 13

      A.   Standard of Review .............................................................. 14

      B.   The Court is foreclosed from considering evidence
           outside the state court record. ............................................. 16

      C.   On the record as it existed before the state court, Tabler
           fails to demonstrate the deficiency of state habeas
           counsel. ............................................................................... 23

      D.   Because Tabler's remaining arguments of state habeas
           counsels' ineffectiveness and IATC exceed the scope of
           the district court's COA, they cannot be considered. .......... 47

      E.   Tabler also fails to demonstrate a reasonable probability
           that he would have prevailed on state habeas had
           counsel prevented him from waiving state habeas
           proceedings. ........................................................................ 48

III.   Tabler's Claim of IATC for Failure to Object to Victim-Impact and Victim Character Testimony Is Without Merit. ..................... 49

    A.   Counsel was not deficient. ..................................................... 51

    B.   Counsels' actions did not prejudice Tabler. .......................... 56

CONCLUSION ...................................................................................... 66

CERTIFICATE OF COMPLIANCE ...................................................... 67

ELECTRONIC CASE FILING CERTIFICATIONS .............................. 67

CERTIFICATE OF SERVICE................................................................ 67

# TABLE OF AUTHORITIES

## Cases

*Austin v. Davis*, 876 F.3d 757 (5th Cir. 2017) ....................... 10, 24, 26, 40

*Autry v. McKaskle*, 727 F.2d 358 (5th Cir. 1984) ................. 37, 39, 45, 46

*Barbee v. Davis*, 660 F. App'x 293 (5th Cir. 2016) ................................. 15

*Black v. Collins*, 962 F.2d 394 (5th Cir. 1992) ....................................... 58

*Brown v. Davenport*, 142 S. Ct. 1510 (2022) .......................................... 20

*Cadet v. Fla. Dep't of Corrs.*, 853 F.3d 1216 (11th Cir. 2017) ................ 28

*Canales v. Stephens*, 765 F.3d 551 (5th Cir. 2014) ................................ 11

*Cantu v. State*, 939 S.W.2d 627 (Tex. Crim. App. 1997) ................ *passim*

*Carty v. Thaler*, 583 F.3d 244 (5th Cir. 2009) ....................................... 31

*Christeson v. Roper*, 574 U.S. 373 (2015), ............................................... 1

*Coleman v. Thompson*, 501 U.S. 722 (1991) ............................... 11, 14, 28

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ................................ 22, 26

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) ....................................... 11

*Demothenes v. Baal*, 495 U.S. 731 (1990) ............................................. 26

*Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) ....................... 59

*Dowthitt v. Johnson*, 230 F.3d 733 (5th Cir. 2000) ............................... 31

*Ex parte Bollman,* 4 Cranch 75 (1807) .................................................. 20

*Ex parte Gonzales*, 463 S.W.3d 508 (Tex. Crim. App. 2015) ............. 33, 42

*Ex parte Gonzales*, No. WR-50,541-03 (Tex. Crim. App. Nov. 10, 2010) ......................................................................................................... 34

*Ex parte Mines*, 26 S.W.3d 910, 915 (Tex. Crim. App. 2000) ........... 41, 42

*Ex parte Reynoso*, 257 S.W.3d 715, 720 fn.2 (Tex. Crim. App. 2008) ..... 41

*Ex parte Tabler*, No. 72,350-01 (Tex. Crim. App. Sept. 16, 2009) ........... 6

*Felker v. Turpin*, 518 U.S. 651, 664 (1996) ........................................... 20

*Ford v. Wainwright*, 477 U.S. 399, 413 (1986) ..................................... 22

*Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) ........................... 15

*Garcia v. State*, 126 S.W.3d 921 (Tex. Crim. App. 2004) ........................53

*Gonzales v. Davis*, 924 F.3d 236 (5th Cir. 2019) ...............................35, 44

*Green v. Johnson*, 116 F.3d 1115 (5th Cir. 1997) ...................................32

*Haley v. State*, 173 S.W.3d 510 (Tex. Crim. App. 2005) ........................50

*Harrington v. Richter*, 562 U.S. 86 (2011) .....................................*passim*

*Hill v. Davis*, 781 F. App'x 277 (5th Cir. 2019) ....................................58

*Holland v. Jackson*, 542 U.S. 649 (2004) ........................................10, 17

*Hughes v. Dretke*, 412 F.3d 582 (5th Cir. 2005) ...................................59

*Johnson v. Blackburn*, 778 F.2d 1044 (5th Cir. 1985) ...........................65

*Johnson v. Cockrell*, 306 F.3d 249 (5th Cir. 2002) ................................47

*Jones v. Barnes*, 463 U.S. 745 (1983) .................................................38

*Koch v. Puckett*, 907 F.2d 524 (5th Cir. 1990) .......................................47

*Lackey v. Johnson*, 116 F.3d 149 (5th Cir. 1997) ..............................47-48

*Lee v. Cain*, 519 F. App'x 869 (5th Cir. 2013) .......................................9

*Lonchar v. Thomas*, 517 U.S. 314 (1996) ..............................................20

*Maples v. Thomas*, 565 U.S. 266 (2012) ........................................*passim*

*Martinez v. Ryan*, 566 U.S. 1 (2012) ..............................................*passim*

*Mata v. Johnson*, 210 F.3d 324 (5th Cir. 2000) ..........................24, 42, 43

*Mathis v. State*, 67 S.W.3d 918 (Tex. Crim. App. 2002) ..................50, 53

*McCoy v. Louisiana*, 138 S. Ct. 1500 (2018) ........................................38

*McFarland v. Lumpkin*, 26 F.4th 314 (5th Cir. 2022) .............................9

*Michael Williams v. Taylor*, 529 U.S. 420, 433 (2000) ...........................21

*Miller-El v. Cockrell*, 537 U.S. 322 (2003)) .........................................14

*Moreno v. Dretke*, 450 F.3d 158, 168 (5th Cir. 2006) ............................48

*Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998) ...............*passim*

*Mullis v. Lumpkin*, No. 21-70008, 2022 WL 3700045 (5th Cir. Aug. 26, 2022) ...............................................................................*passim*

*Murray v. Carrier*, 477 U.S. 478 (1986) ...............................................11

*Newbury v. Stephens*, 756 F.3d 850 (5th Cir. 2014) ................................ 15

*Nichols v. Scott*, 69 F.3d 1255 (5th Cir. 1995) ........................................ 59

*O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) ..................................... 10-11

*Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011) ......................................... 36

*Patrick v. State*, 906 S.W.2d 481 (Tex. Crim. App. 1995) ...................... 38

*Payne v. Tennessee*, 501 U.S. 808 (1991) ........................................... 50-51

*Perez v. Stephens*, 745 F.3d 174 (5th Cir. 2014) .................................... 38

*Ramirez v. Dretke*, 396 F.3d 646 (5th Cir. 2005) .................................. 9-10

*Rivera v. Quarterman*, 505 F.3d 349 (5th Cir. 2007) .............................. 10

*Roberts v. Thaler*, 681 F.3d 597 (5th Cir. 2012) .................................... 53

*Rumbaugh v. Procunier*, 753 F.2d 395, 398 (5th Cir. 1985) .............. 43-44

*Schneider v. McDaniel*, 674 F.3d 1144 (9th Cir. 2012) .................... 35, 44

*Schriro v. Landrigan*, 550 U.S. 465, 476 (2007) ............................. 13, 25

*Segundo v. Davis*, 831 F.3d 345, 350–51 (5th Cir. 2016) .................. 48-49

*Shinn v. Martinez Ramirez*, 142 S. Ct. 1718 (2022) ....................... *passim*

*Shoop v. Twyford*, 142 S. Ct. 2037 (2022) ..................................... *passim*

*Smith v. Robbins*, 528 U.S. 259 (2000) ................................................. 48

*Smith v. State*, 919 S.W.2d 96 (Tex. Crim. App. 1996) ............... 54-55, 56

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................. *passim*

*Tabler v. Lumpkin*, 543 F.Supp.3d 461 (W.D. Tex. 2021) ............... 2, 7, 8

*Tabler v. State*, No. 75,677 (Tex. Crim. App. 2009) ................................ 5

*Tabler v. Stephens*, 588 F. App'x 297 (5th Cir. 2014). .................... *passim*

*Theriot v. Whitley*, 18 F.3d 311 (5th Cir. 1994) ..................................... 32

*Trevino v. Thaler*, 569 U.S. 413 (2013) ................................................. 14

*United States v. Mitchell*, 709 F.3d 436 (5th Cir. 2013) ........................ 24

*United States v. Stalnaker*, 571 F.3d 428 (5th Cir. 2009) ................. 27-28

*United States v. Wheaten*, 826 F.3d 843 (5th Cir. 2016) .................... 29-30

*Wainwright v. Sykes*, 433 U.S. 72 (1977) .............................................. 11

*Walker v. United States*, 433 F.2d 306 (5th Cir. 1970) ....................54, 55

*Westley v. Johnson*, 83 F.3d 714 (5th Cir. 1996) ....................................59

*Wiggins v. Smith*, 539 U.S. 510 (5th Cir. 2003) .....................................65

*Wilder v. Cockrell*, 274 F.3d 255 (5th Cir. 2001) ....................................11

*Wilkins v. Stephens*, 560 F. App'x 299 (5th Cir. 2014)............................28

*Wood v. Quarterman*, 491 F.3d 196 (5th Cir. 2007 ....................37, 39, 45

## Statutes

28 U.S.C. § 1291................................................................................3

28 U.S.C. § 2253(a) ...........................................................................3

28 U.S.C. § 2254................................................................................3, 9

28 U.S.C. § 2254(b) .....................................................................10, 22

28 U.S.C. § 2254(d) ......................................................................11, 22

28 U.S.C. § 2254(e)(2) ..............................................................*passim*

Due Process Clause ...................................................................*passim*

Suspension Clause ..............................................................19, 20, 23

## Rules

Fed. R. Civ. P. 59(e) ......................................................................5, 8

Tex. Disciplinary R. Prof'l Conduct R. 1.02...........................................38

Tex. Disciplinary R. Prof'l Conduct R. 1.02...........................................38

## INTRODUCTION

This appeal arises from a federal habeas case. Petitioner–Appellant Richard Tabler is a Texas inmate convicted of capital murder and sentenced to death. His conviction was affirmed and he successfully waived state habeas proceedings after the trial court conducted a waiver hearing. Tabler then filed a federal habeas petition raising multiple claims. ROA.182–257. The district court denied his petition based on procedural default and lack of merit, and Tabler appealed; this Court affirmed the district court's judgment. ROA.445–73, 474; *Tabler v. Stephens*, 588 F. App'x 297 (5th Cir. 2014).

Three months later, the Court vacated its decision, in part, based on *Christeson v. Roper*, 574 U.S. 373 (2015), and its effect on the exception to procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012), especially as Tabler's state habeas counsel had been appointed as federal habeas counsel and thus may have suffered a conflict of interest in presenting their own potential ineffectiveness as "cause" under *Martinez*. *Tabler v. Stephens*, 591 F. App'x 281 (5th Cir. 2015). The Court then remanded the case "solely to consider in the first instance whether Tabler, represented by his new counsel [Marcia] Widder or other

1

unconflicted counsel, can establish cause for the procedural default of any ineffective-assistance-of-trial-counsel [(IATC)] claims pursuant to *Martinez* that he may raise, and, if so, whether those claims merit relief." *Id.*

Upon remand, Tabler filed a petition and an amended petition, to which the Director responded by filing a Motion for Summary Judgment. ROA.710–991, ROA.2071–2326. The court below found that Tabler failed to demonstrate that state habeas counsels' performance was deficient or prejudiced him; the court also found no merit to Tabler's underlying IATC claims. ROA.7422–7508; *Tabler v. Lumpkin*, 543 F.Supp.3d 461, 485–86, 487 (W.D. Tex. 2021). However, the lower court granted a certificate of appealability (COA) on two issues: whether state habeas counsel rendered ineffective assistance for failing to challenge Tabler's competency to waive state habeas proceedings, and whether Tabler was prejudiced by trial counsels' failure to object to extraneous victim-impact evidence elicited at the punishment phase of trial. *Tabler*, 543 F.Supp.3d at 523–24; ROA.7505–07.

The district court's findings of fact are not clearly erroneous and Tabler has not established cause under *Martinez* for his defaulted IATC

claims. Nor has he shown he was prejudiced by trial counsels' election not to object to extraneous victim-impact evidence introduced at the punishment phase of trial. Consequently, the Court should affirm the district court's denial of habeas relief.

## JURISDICTIONAL STATEMENT

This appeal proceeds from a federal habeas corpus case filed below pursuant to 28 U.S.C. §§ 2241 and 2254, in which the district court entered final judgment. *See* ROA.7509, 7628–31. The Court has jurisdiction over Tabler's appeal pursuant to 28 U.S.C. §§ 1291 and 2253(a).

## STATEMENT OF THE ISSUES

(1)    Were state habeas counsel ineffective in deciding not to challenge Tabler's competency at the hearing on his waiver of state habeas proceedings, particularly where Tabler has not rebutted the presumption of correctness afforded the state trial court's finding of fact—that Tabler was competent—by clear and convincing evidence contained within the state court record?

(2)    Does Tabler demonstrate he suffered prejudice from trial counsels' strategic decision to not object to extraneous victim-impact evidence presented at the punishment phase?

3

## STATEMENT OF THE CASE

### I.    Statement of Facts

In its original opinion, this Court summarized the evidence as follows:

> On March 21, 2007, Tabler was convicted of capital murder for the shooting deaths of Mohamed-Amine Rahmouni and Haitham Zayed. During the penalty phase of his trial, the State presented to the jury Tabler's confession that he murdered two women for spreading news of his crimes. Tabler admitted to luring the women to a lake with the promise of drugs and then shooting them each multiple times with the same gun used to murder Rahmouni and Zayed. The jury heard further testimony that Tabler had a history of threatening law enforcement officers and fellow inmates.

> Tabler's trial counsel presented mitigating evidence in an attempt to show that Tabler was "not normal" and therefore undeserving of the death penalty. This evidence included: (1) testimony from Tabler's mother and sister about his difficult childhood, potential birth trauma, and history of psychiatric treatment; (2) testimony from Dr. Meyer Proler, a clinical neurophysiologist, concerning an abnormality of the left temporal frontal region of Tabler's brain that causes difficulty learning, planning, and weighing the consequences of actions; (3) testimony from Dr. Susan Stone, a psychiatrist, that Tabler suffered from a severe case of attention deficit hyperactivity disorder, borderline personality disorder, and a history of head injuries, all of which inhibited his ability to rationally assess situations and control his impulses; and (4) testimony from Dr. Deborah Jacobvitz, a psychologist, regarding the impact of parental neglect and abandonment on Tabler's development.

In rebuttal, the state called Dr. Richard Coons, a psychiatrist, who diagnosed Tabler as having antisocial personality disorder. Dr. Coons testified that although individuals with antisocial personality disorder may lack remorse or concern for others, they are not compelled to commit criminal acts. Following the State's rebuttal, both parties presented closing arguments. During the State's closing, the prosecutor argued that Tabler's troubled childhood did not mitigate his culpability because it was not related to the crimes for which he was convicted. After three hours of deliberation, the jury found that Tabler presented a continuing threat to society and that there was insufficient mitigating evidence to warrant a sentence of life imprisonment in lieu of a death sentence. *See* Tex. Code Crim. Proc. art. 37.071 § 2(b), (e). The trial court accordingly sentenced Tabler to death.

Tabler, 588 F. App'x at 298–301 (footnotes omitted).

## II.   Conviction and Postconviction Proceedings

Tabler was convicted and, on April 2, 2007, sentenced to death for gunning down Mohamed-Amine Rahoumani and Haitham Zayed during the same criminal transaction. ROA.3304 (indictment), ROA.3614 (judgment). The Texas Court of Criminal Appeals (CCA) upheld Tabler's conviction and death sentence. *Tabler v. State*, No. 75,677 (Tex. Crim. App. 2009), *cert. denied*, 131 S. Ct. 70 (2010).

While his direct appeal was pending in the CCA, Tabler waived his right to pursue state habeas proceedings. ROA.3094– 3109 (reporter's record of waiver hearing); ROA.3110–11. After a change of heart,

ROA.3112, Tabler sought permission to file a state habeas application, ROA.3288–93, which was denied. *Ex parte Tabler*, No. 72,350-01 (Tex. Crim. App. Sept. 16, 2009).

Tabler then sought to waive his federal habeas proceeding. ROA.75–76; *see* ROA.79. After a hearing, the district court determined that while mentally competent to waive his appeals, Tabler's waiver was not voluntary and ordered that his federal habeas proceeding move forward. ROA.86–88, ROA.126–30, ROA.260–80, ROA.278–79. Tabler filed a motion to stay and abate—so that he could again seek state habeas relief—but the lower court denied that motion. ROA.139–48; ROA.7 (Text Order of Oct. 11, 2011). The district court then denied federal habeas relief in all respects and also denied Tabler's renewed request for a stay and abatement. ROA.446–74, ROA.473; *see also* ROA.131–38 (initial federal habeas petition), ROA.191–257 (application for federal habeas relief), ROA.257 (request for stay and abatement). Tabler filed a motion pursuant to Federal Rule of Civil Procedure 59(e), ROA.475–83, which was denied. ROA.500–02.

On appeal, this Court denied Tabler's request for a COA and affirmed the district court's denial of habeas relief. *Tabler*, 588 F. App'x

297. However, on January 27, 2015, this Court vacated its decision in part and remanded the case back to the district court "solely to consider in the first instance whether Tabler, represented by his new . . . unconflicted counsel, can establish cause for the procedural default of any ineffective-assistance-of-trial-counsel claims pursuant to *Martinez* that he may raise, and, if so, whether those claims merit relief." *Tabler*, 591 F. App'x 281 (5th Cir. 2015).

Tabler filed an amended federal habeas petition addressing the alleged ineffectiveness of state habeas counsel and prejudice under *Martinez*, including raising several defaulted IATC claims. ROA.710–991. The district court found Tabler did not demonstrate cause and prejudice under *Martinez*, determining that state habeas counsel were not deficient nor was Tabler prejudiced, and that trial counsel were not ineffective. ROA.7422–7508; *Tabler*, 543 F.Supp.3d at 485–86, 487. Of the claims Tabler presented, the district court granted a COA regarding the effectiveness of state habeas counsel's assistance when they did not challenge Tabler's competency to waive state habeas proceedings, and whether, pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), Tabler was prejudiced when trial counsel did not object to the

introduction of victim-impact evidence at punishment. *Tabler*, 543 F.Supp.3d at 523–24; ROA.7505–07. Tabler then filed a Rule 59(e) motion to alter or amend the judgment and to expand the COA, which the district court denied. ROA.7515–35, ROA.7628–31. This appeal follows.

## SUMMARY OF THE ARGUMENT

Tabler has not rebutted the state court's finding of competency with clear and convincing evidence from the state court record, as required by *Shinn v. Martinez Ramirez*, 142 S. Ct. 1718 (2022), nor has he shown that he meets an exception to 28 U.S.C. § 2254(e)(2) that would allow the Court to consider evidence developed for the first time in federal court. Because the state court record reflects Tabler was competent to enter his waiver of state habeas proceedings, he cannot establish deficient performance under *Strickland* for state habeas counsel's action in not challenging his competency at the state habeas waiver hearing, and thus he cannot establish cause under *Martinez* to excuse his defaulted IATC claims. He also cannot demonstrate prejudice, as required by *Martinez,* because the claim addressed in his second allegation is not substantial.

As to that second issue, Tabler does not meet both prongs under *Strickland* to show this IATC claim is substantial. That is, Tabler cannot overcome the presumption that trial counsel acted strategically in not objecting to extraneous victim-impact testimony at punishment. Nor does Tabler show that, even if counsel were deficient in not objecting to the testimony, he would have received a life sentence rather than a death sentence.

## ARGUMENT

## I.    Standard of Review

In federal habeas cases, "[t]he statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). The Court "review[s] de novo the district court's disposition of issues of law and mixed issues of law and fact" and "review[s] the district court's factual determinations for clear error." *McFarland v. Lumpkin*, 26 F.4th 314, 318–19 (5th Cir. 2022) (citing *Lee v. Cain*, 519 F. App'x 869, 876 (5th Cir. 2013)). The Court conducts a de novo review "by independently applying the law to the facts found by the district court, as long as the district court's factual determinations are not clearly

erroneous." *Ramirez v. Dretke*, 396 F.3d 646, 649 (5th Cir. 2005). "A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole." *Rivera v. Quarterman*, 505 F.3d 349, 361 (5th Cir. 2007).

Fact findings made by the State court are "'presumed to be correct' and '[t]he applicant [bears] the burden of rebutting the presumption of correctness by clear and convincing evidence,'" even where there was no adjudication of habeas claims on the merits. *Austin v. Davis*, 876 F.3d 757, 776 (5th Cir. 2017) (quoting 28 U.S.C. § 2254(e)(1)). Use of evidence not properly presented to the state court is generally foreclosed in federal court. *See Martinez Ramirez*, 142 S. Ct. at 1738 (discussing *Holland v. Jackson*, 542 U.S. 649, 653 (2004)); *see also id.* at 1739 ("[A] federal court may not hold an evidentiary hearing—*or otherwise consider new evidence*—to assess cause and prejudice under *Martinez*.") (emphasis added).

To obtain federal habeas relief, a petitioner must first exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1). Claims that have not been properly presented to the highest state court are procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S.

838, 844, 848 (1999); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) ("procedurally proper" is in a "proper manner according to the rules of the state courts."). The Court is also precluded from reviewing "claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *Canales v. Stephens*, 765 F.3d 551, 562 (5th Cir. 2014) (citing *Maples v. Thomas*, 565 U.S. 266, 280 (2012)).

A petitioner may overcome a procedural default only if he "shows 'cause' for and 'prejudice' from the default." *Mullis v. Lumpkin*, No. 21-70008, 2022 WL 3700045, at *7 (5th Cir. Aug. 26, 2022) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "To establish 'cause' . . . the prisoner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Davila*, 137 S. Ct. at 2065 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). An external factor is one that "cannot fairly be attributed to" the prisoner. *Coleman*, 501 U.S. at 753.

Under 28 U.S.C. §§ 2254(d)(2) and (e)(2), review of a federal habeas claim is limited to the state court record and, where a prisoner has "failed

to develop the factual basis of a claim in State court proceedings, no discovery or evidentiary hearing may occur unless the prisoner meets very limited exceptions. That is, a hearing can occur only if the claim either relies on "(1) a 'new' and 'previously unavailable' 'rule of constitutional law' made retroactively applicable by the Supreme Court, or (2) 'a factual predicate that could not have been previously discovered through the exercise of due diligence,'" and that "further factfinding would demonstrate, 'by clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the crime charged." *Martinez Ramirez*, 142 S. Ct. at 1734 (quoting §§ 2254(e)(2)(A)(i), (ii), 2254(e)(2)(B)); *Shoop v. Twyford*, 142 S. Ct. 2037, 2046 (2022) ("[W]hen a federal habeas court . . . admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied.") (quoting *Martinez Ramirez*, 142 S. Ct. at 1738). Further, "[i]f a prisoner can satisfy either of these exceptions, he also must show that further factfinding would demonstrate, 'by clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the crime charged." *Id.* (quoting § 2254(e)(2)(B)).

Additionally, in *Martinez Ramirez*, the Supreme Court recently emphasized, "under § 2254(e)(2), a federal habeas court may *not* conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." 142 S. Ct. at 1734 (emphasis added). That is because "under § 2254(e)(2), a prisoner is 'at fault' even when state postconviction counsel is negligent." *Id*. at 1735. Additionally, a court improperly holds an evidentiary hearing or considers new evidence to determine whether cause and prejudice exist to overcome procedural default "if the newly developed evidence never would 'entitle the prisoner to federal habeas relief.'" *Id*. at 1739 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)).

## II. State Habeas Counsel Were Not Ineffective for Not Challenging His Competency, and Tabler Therefore Does Not Demonstrate Cause to Excuse Procedural Default under *Martinez*.

Tabler argues state habeas counsel "effectively abandoned" him during state habeas proceedings and showed extraordinary deficiency in the handling of his state habeas waiver hearing. Pet'r Br. at 64. He contends counsels' failure to challenge his competency to waive his rights prevented him from developing the state court record and raising his

13

substantial claims for relief. *See* Pet'r Br. at 40–43. But he does not show the district court's denial of his claim was in error.

## A.    Standard of Review

In *Martinez*, the Supreme Court recognized a "narrow exception" to cause-and-prejudice under *Coleman*, specifically for procedurally barred IATC claims. 566 U.S. at 9. To overcome procedural default under *Martinez*, Tabler must establish not only "cause" but also "prejudice"— that state habeas counsel performed deficiently, and "the underlying [IATC] claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez,* 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). This exception applies to Texas capital cases. *Trevino v. Thaler*, 569 U.S. 413, 428–29 (2013).

In reviewing whether state habeas counsel was ineffective, the standards of *Strickland* apply. *Martinez*, 566 U.S. at 14. *Strickland's* first prong requires a petitioner to establish that counsel's performance fell beyond the bounds of prevailing, objective professional standards. *Strickland*, 466 U.S. at 688. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's

14

representation was within the 'wide range' of reasonable professional assistance." *Richter*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).

Under the second-prong of the *Strickland* test, a defendant must show that his counsel's deficient performance prejudiced him. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). At a minimum, actual prejudice requires an inmate to show a reasonable probability that he would have been granted state habeas relief had state habeas counsel's performance not been deficient. *Barbee v. Davis*, 660 F. App'x 293, 314 (5th Cir. 2016) (unpublished); *Newbury v. Stephens*, 756 F.3d 850, 872 (5th Cir. 2014).

Again, consideration of evidence not developed in the state court is limited to when a petitioner meets the exceptions under 28 U.S.C. § 2254(e)(2); *Twyford*, 142 S. Ct. at 2046 ("[W]hen a federal habeas court . . . admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied.") (quoting *Martinez Ramirez*, 142 S. Ct. at 1738). Furthermore, extra-record evidence cannot be considered for the purpose of demonstrating cause for ineffective assistance of state habeas counsel. *Martinez Ramirez*, 142 S. Ct. at 1734;

15

*see Twyford*, 142 S. Ct. at 2046 (where a petitioner cannot meet the § 2254(e)(2) "standards for admitting new merits evidence, it serves no purpose to develop such evidence just to assess cause and prejudice").

## B.   The Court is foreclosed from considering evidence outside the state court record.

Tabler largely relies on evidence that was not before the state court in support of his arguments. *See*, e.g., Pet'r Br. at 61–62, 67 n.12, 67–68, 70–75; ROA.1049–2019. As discussed below, Tabler does not meet any exception under AEDPA to develop the record in the federal court. Nor has he demonstrated his newly-presented evidence or evidence that he seeks to develop can be considered in his federal habeas proceedings. Accordingly, none of this evidence may be considered.[1]

---

[1]    In his answer to Tabler's amended petition in the district court, the Director cited to Tabler's exhibits to rebut his claims, and the district court relied on those exhibits in support of its denial of habeas relief. *See* ROA.2095–2100; *see generally* ROA.2093–2325 (Answer), ROA.7422–7507 (Opinion). As will be discussed, *Martinez Ramirez* and §2254(e)(2) bar the consideration of any new evidence introduced here that was not presented to the state court. *See Mullis*, 2022 WL 3700045 at *10 ("[*Martinez*] *Ramirez* very likely will reduce the evidence available to Mullis to prove his claim."). Therefore, the Director does not now rely upon that new evidence in refuting Tabler's claims. But should the Court consider the evidence presented in the federal court, the Director asks the Court to consider it in its entirety, both for and against Tabler's arguments, as the district court did.

### 1. Tabler does not meet the requirements of § 2254(e)(2).

Tabler has never argued that his IATC claims fall within § 2254(e)(2)'s stringent exceptions, and he cannot: his claims do not rely on a "new rule of constitutional law" and his *Martinez* theory necessarily means that the factual bases of his claims were previously available. *See* § 2254(e)(2)(A)(i), (ii); ROA.821–989. Nor has he ever alleged "that further factfinding would demonstrate, 'by clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the crime charged." *Martinez Ramirez*, 142 S. Ct. at 1734 (quoting § 2254(e)(2)(B)); *see* ROA.821–989.

Because Tabler cannot meet § 2254(e)(2)'s exceptions, this Court "may not . . . consider new evidence—to assess cause and prejudice under *Martinez*," *id.* at 1739, and this Court's adjudication of Tabler's claims is limited to the properly-developed state court record, *id.* at 1734. Thus, § 2254(e)(2) prevents this Court from considering Tabler's new evidence that was not properly presented to the state court in his initial state habeas proceedings. *See Martinez Ramirez*, 142 S. Ct. at 1738 (discussing *Holland*, 542 U.S. at 653). For these reasons, Tabler's additional evidence submitted to the district court, in addition to his request for remand for

17

an evidentiary hearing and discovery here, should be denied, and the evidence not properly presented to the CCA may not be considered.

### 2. There is no merit to Tabler's argument that *Martinez Ramirez* does not apply to him.

Tabler argues at length that *Martinez Ramirez* and § 2254(e)(2) do not apply to him. Pet'r Br. at 44–47. Namely, he asserts *Maples* and *Martinez* apply only where state habeas counsel acted with "negligence." Pet'r Br. at 45–46. He then argues that his state habeas counsel's conduct amounts to more than mere negligence; rather, counsels' conduct arose to the level of abandonment and extraordinarily deficient conduct. Pet'r Br. at 47–50. Accordingly, he posits, the bar against evidence as clarified in *Martinez Ramirez* is inapplicable here. However, as will be discussed in Section II(C)(2), Tabler fails to demonstrate abandonment by counsel. Indeed, as recently noted by this Court, "[a]bandonment occurs when an attorney ceases representing his client 'without notice.'" *Mullis,* 2022 WL 3700045, at 8 (citing *Maples*, 565 U.S. at 281). This did not happen here. Regardless, *Martinez Ramirez* clearly applies in this case, with no exception, because Tabler waived his state habeas process and thus knowingly chose to forego factual development.

### 3.    *Martinez Ramirez* does not violate the Suspension Clause or deprive Tabler of Due Process through counsel's actions or perceived abandonment.

Tabler complains that application of *Martinez Ramirez* forecloses evidentiary development, categorically barring consideration of IATC claims where the state court record was not developed, and accordingly creates an unconstitutional suspension of the writ and a violation of Due Process. Pet'r Br. at 50–58. He admits the "court need not address that broad argument," and instead, asks the Court to review whether "state postconviction counsel's abandonment would suspend the writ for the small class of cases in which abandonment occurs," and whether a violation of the Due Process Clause occurs for petitioners whose counsel have abandoned them, leading to preventing federal fact development. Pet's Br. at 50, 55–58.

At the outset, the Court need not consider his Suspension Clause argument as Tabler's IATC claims have not been categorically foreclosed from review. Tabler was neither abandoned by counsel, nor did counsel provide ineffective assistance, as discussed below. Despite his inability to overcome the procedural default, the district court still considered the merits of his claims in the alternative and under a de novo standard and

denied relief. ROA.7443–7505. Indeed, many of the claims raised, including the underlying IATC claim addressed in Section III, *infra*, are record based and can be reviewed without the necessity of further factual development.

Nevertheless, application of *Martinez Ramirez* does not violate the Suspension Clause. The Supreme Court has "long recognized that 'the power to award the writ by any of the courts of the United States, must be given by written law,'" and "that judgments about the proper scope of the writ are 'normally for Congress to make.'" *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (quoting *Ex parte Bollman*, 4 Cranch 75, 94 (1807); *Lonchar v. Thoma*s, 517 U.S. 314, 323 (1996)). Section 2254(e)(2)'s restrictions mirror the Court's judicially-crafted evidentiary development limitations. *Martinez Ramirez*, 142 S. Ct. at 1733–34. With similar judicial developments and similar statutory language, a similar result is required—there is no suspension of the writ. *See Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022) ("When Congress supplies a constitutionally valid rule of decision, federal courts must follow it. In AEDPA, Congress announced such a rule.").

Further, § 2254(e)(2) does not completely foreclose evidence and thus does not deprive a petitioner from his right to due process. Rather, § 2254(e)(2) has exceptions built directly into it. And "a federal court, in deciding whether to grant an evidentiary hearing or 'otherwise consider new evidence' under § 2254(e)(2), must first take into account these restrictions." *Twyford*, 142 S. Ct. at 2044 (citing *Martinez Ramirez*, 142 S.Ct. at 1739). The evidence that may be developed must have been able to be "legally considered in the prisoner's case" by the state court. *Id.* (quoting *Martinez Ramirez*, 142 S. Ct. at 1739 (internal quotation marks and citation omitted)).

If § 2254(e)(2) applies and the prisoner cannot satisfy its "stringent requirements," *Michael Williams v. Taylor*, 529 U.S. 420, 433 (2000), holding an evidentiary hearing or otherwise expanding the state-court record would "prolong federal habeas proceedings with no purpose," *Martinez Ramirez*, 142 S. Ct. at 1739 (internal quotation marks omitted). And that would in turn disturb the "State's significant interest in repose for concluded litigation." *Richter*, 562 U.S. at 103.

And evidentiary development is foreclosed only when the petitioner has "failed to develop the factual basis of a claim in State court

21

proceedings." § 2254(e)(2). So in any case where (e)(2) applies, the petitioner necessarily did have an opportunity to develop the evidence—in state court. The refusal to consider evidence that is not introduced in a procedurally correct manner is commonplace in the law. Holding that § 2254(e)(2) is unconstitutional would call into question § 2254(d)(1), which "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). It would similarly call into question AEDPA's exhaustion requirement, which, like § 2254(e)(2), requires that a state prisoner's claims must first be presented to the state court before they may be considered in the federal forum unless certain exceptions are met. 28 U.S.C. § 2254(b).

Tabler had an opportunity to present his evidence in state court—he failed to take advantage of it when he chose to waive the state habeas process and then failed to meet the exceptions that would excuse his earlier omission. *Ford v. Wainwright*, 477 U.S. 399, 413 (1986) ("'[t]he fundamental requisite of due process of law is the opportunity to be heard'") (citation omitted).

In sum, § 2254(e)(2) does not result in a suspension of the writ or a violation of the Due Process Clause. Accordingly, application of *Martinez Ramirez* cannot result in an unconstitutional suspension of the writ or due process violation.

### C. On the record as it existed before the state court, Tabler fails to demonstrate the deficiency of state habeas counsel.

To the extent Tabler argues counsel were ineffective because they did not argue he was incompetent to waive state habeas proceedings, *see* Pet'r Br. 70–75, 77–78, his claim fails. The state trial court found that Tabler was competent to waive his state habeas proceeding, and Tabler fails to rebut the AEDPA deference owed that finding of fact. He also fails to demonstrate his competency was an issue for consideration at his state habeas proceeding. And when "reconstruct[ing] the circumstances of counsel's challenged conduct," *Strickland*, 466 U.S. at 689, as reflected in the record, Tabler does not show state habeas counsel were ineffective for not challenging his competency.

**1.    Tabler does not rebut the presumption of correctness afforded the state court's competency finding, and he thus cannot show state habeas counsel were ineffective.**

As discussed previously, Tabler fails to meet his burden § 2254(e)(1) to show with clear and convincing evidence from the state court record that the trial court's finding of competency should not be presumed correct. Certainly, Tabler has suffered mental health issues.[2] *See Tabler*, 588 F. App'x at 298–99 (describing testimony about Tabler's mental illnesses from three defense expert witnesses and one State witness presented at the punishment phase of trial). Even so, "the presence or absence of mental illness or brain disorder is not dispositive" to competency. *United States v. Mitchell*, 709 F.3d 436, 440 (5th Cir. 2013) (citing *Mata v. Johnson*, 210 F.3d 324, 329 n.2 (5th Cir. 2000); *Austin*, 876 F.3d at 780 ("A history of suicidality and depression, however, does not render a defendant incompetent.").

Moreover, the judge presiding over Tabler's state habeas hearing was the same judge who presided over Tabler's trial. She thus had the

---

[2]    Tabler describes details contained within Dr. Harrison's eighteen-page report and refers to several letters where Tabler expressed he was being threatened. Pet'r Br. at 73–74. Again, however, these documents are not part of the state court record presented to the CCA; as discussed in Part II(B), this evidence cannot be considered.

opportunity to observe the expert testimony presented at punishment, as well as Tabler's conduct over an extended time. *See Landrigan*, 550 U.S. at 476 (noting that the judge presiding on postconviction review was ideally situated to assess Landrigan's instructions to his counsel because the judge was the same judge that sentenced Landrigan and discussed the issues with him). As previously noted by this Court, lay and expert witnesses testified at trial that Tabler has a history of psychiatric treatment; an abnormality of the temporal frontal region of his brain causes difficulty learning, planning, and weighing the consequences of actions; a severe case of attention deficit hyperactivity disorder, borderline personality disorder, and a history of head injuries; antisocial personality disorder; and he may have been impacted by childhood neglect and abandonment. *Tabler*, 588 F. App'x at 298–301. Given this backdrop, the trial court was well aware of Tabler's mental health issues. And before submitting a summary letter[3] to the trial court, Dr. Harrison

---

[3]    As noted by Tabler, the reporter's record for Tabler's state habeas waiver hearing indicated a short report authored by Dr. Harrison, but it was not included in the state court clerk's record. Pet'r Br. at 67 n.12. In finding counsel's decision not to challenge Tabler's waiver to be "imminently reasonable," ROA.7441, the district court cited Dr. Harrison's summary letter, ROA.1312, as well as Dr. Harrison's eighteen-page report that Tabler argues was not introduced at the waiver hearing, ROA.1488–1504, and a letter from counsel to Tabler, ROA.1329.

also had the opportunity to observe Tabler when evaluating him for competency. *See* ROA.3105.

Tabler fails to rebut the presumption of correctness afforded the state habeas court's competency finding with clear and convincing evidence from the state court record, as is required under § 2254(e)(1). Pet'r. Br. at 70–73; *Austin*, 876 F.3d at 780–81 (applying § 2254(e)(1) to state habeas competency finding); *see also Demothenes v. Baal*, 495 U.S. 731, 735 (1990) (state court finding of competency owed presumption of correctness under pre-AEDPA statute); *Pinholster*, 563 U.S. at 181. Accordingly, Tabler does not demonstrate the lower court clearly erred in applying a presumption of correctness to the trial court's finding of his competence, and in finding Tabler did not overcome that presumption. Given the above, Tabler cannot show habeas counsel were ineffective.

## 2.    Habeas counsel did not abandon Tabler.

Tabler tries to avoid the limitations of both *Martinez Ramirez* and *Martinez* by complaining that he was effectively abandoned by counsel and thus no agency relationship existed to impute counsel's behavior to Tabler. Pet'r Br. At 44–49; *see Maples,* 565 U.S. 266. Tabler argues that the sum of state habeas counsel's ineffective assistance is so small as to

constitute abandonment. Pet'r Br. at 61–83. But state habeas counsel's performance was anything but abandonment. For the reasons discussed here and in the Director's Response to Tabler's Motion to Expand COA, Tabler has not demonstrated counsel was ineffective, let alone that he was abandoned. Further, the state habeas record supports the conclusion that habeas counsel did not abandon Tabler.

Tabler interchangeably uses "extraordinary deficiency" and abandonment when discussing state habeas counsels' "refus[al] to take on the role of advocates during the waiver hearing" and argues the sum of counsels' ineffectiveness constitutes abandonment. Pet'r Br. 66–70, 75–78. But there is an "*essential difference* between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client." *Maples*, 565 U.S. at 282 (emphasis added). Tabler's assertions provide the Court with no meaningful framework to distinguish between Tabler's two alternative theories demonstrating cause. The failure to provide the Court with a framework for analyzing the matter is inadequate briefing. *See, e.g.*, *United States v. Stalnaker*, 571 F.3d 428, 439–40 (5th Cir. 2009) (finding inadequate briefing because, inter alia, the appellate did "not fully explain" her arguments or

"cite the . . . relevant law"). The argument should thus be found forfeited on appeal.

Even if the argument isn't forfeited, it isn't meritorious. As mentioned above, there is an "essential difference" between negligent lawyering and abandonment. *Maples*, 565 U.S. at 282. The former is charged to a petitioner "under 'well-settled principles of agency law'" and therefore "does not qualify as 'cause.'" *Id.* at 280–81 (quoting *Coleman*, 501 U.S. at 753–54). "A markedly different situation is presented, however, when an attorney abandons his client without notice, and thereby occasions the default." *Id.* at 281. "[T]his sort of *complete* attorney abandonment can constitute the kind of 'extraordinary circumstances' necessary to supply cause for a procedural default." *Wilkins v. Stephens*, 560 F. App'x 299, 304 (5th Cir. 2014) (emphasis added). It is marked by failing "to keep [a] client abreast of key developments in his case," failing "to respond to [a] client's inquiries or concerns," and severing "nearly all communication with his client for a period of years, or even for months, or even weeks." *Cadet v. Fla. Dep't of Corrs.*, 853 F.3d 1216, 1234 (11th Cir. 2017).

That is not the case here. The record before the CCA reflects that state habeas counsel received Tabler's letter dated August 11, 2008,[4] where Tabler tells the court he wishes to drop "all appeals;" counsel spoke with Tabler about his deadline for filing a state habeas application; Tabler declined "talk[ing] with [his] attorneys once again about this matter" at his waiver hearing; and, in response to questioning, he replied, "There's nothing really more needs to be said. I thanked them for what they did." ROA.3101–04; *see* ROA.3105 (counsel provided letter of competency as "officers of the Court," because counsel felt "it would be inappropriate for us to offer it as an exhibit.").

At the waiver hearing, counsel referenced multiple letters they sent to Tabler, stated on the record they "will stay on as his representatives to whatever extent he wants so long as he's in the system," pursued a ruling on their request for additional funding for mitigation experts, and affirmed to the trial court they will act as standby counsel. ROA.3107– 08. In sum, counsels' actions end the abandonment inquiry. *See e.g., United States v. Wheaten*, 826 F.3d 843, 852 (5th Cir. 2016) (finding that

---

[4]     ROA.3664.

inmate was not abandoned where attorney continued communicating with client despite filing an untimely petition for writ of certiorari).

Further, several distinguishable facts in *Maples* show Tabler misguidedly relies upon that case: (1) Maples's appointed counsel departed the law firm where they were employed at the time of appointment and provided no notice or withdrawal to the court; (2) "no other [firm] lawyer entered an appearance on Maples'[s] behalf, moved to substitute counsel, or otherwise notified the court of any change in Maples'[s] representation" at appointed counsels' departure; (3) during the following nine-month period, no actions were taken by other firm attorneys to properly represent Maples or otherwise inform the court of prior counsels' departure; (4) the court's notice of its denial of Maples's postconviction petition was eventually returned unopened from the formerly-appointed counsels' firm, and Maples's local attorney—who, under ordinary local practice, had represented that he would act as local counsel in name only—did not act on the notice; and (5) "Hornbook agency law establishes that the attorneys' departure from [the law firm] and their commencement of employment that prevented them from

representing Maples ended their agency relationship with him." *Maples*, 565 U.S. at 275–78, 284.

Certainly, abandonment by counsel is not shown only by these exact facts. But again, Tabler's counsel's actions were nothing like Maples's. Rather, the record reflects state habeas counsel and Tabler communicated several times, counsel offered their continued assistance after Tabler entered his waiver, and counsel submitted Tabler's belated request to resume his postconviction application several months after he had entered his waiver. ROA.3107–08, ROA.3288–92.

Ultimately, Tabler's arguments speak only to the subjective quality of counsels' representation; accordingly, his arguments go only to ineffectiveness, not abandonment. *See Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009) ("We must be particularly wary of arguments that essentially come down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing." (quoting *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000)).

Recently, in reviewing a case with a similar *Martinez* posture as here, this Court found that jurists could debate the actions of state

31

habeas counsel in not challenging a state habeas applicant's competency where the applicant desired to waive state habeas proceedings. *Mullis*, 2022 WL 3700045 at *8–10. But, as the Court recognized, declining to object to the content of an expert psychiatric report does not "necessarily" equate to "inadequate representation." *Id.* at *9. Rather, "[i]f the available facts would not have prompted a reasonable lawyer to investigate competency further, doing so is unnecessary to render reasonably effective assistance." *Id.* (citing *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994)). Or state habeas counsel may have provided effective assistance where they had investigated "and reasonably concluded that [the applicant] was competent to waive his right to review." *Id.* (*Green v. Johnson*, 116 F.3d 1115, 1123 (5th Cir. 1997)).

Again, the state habeas record here shows counsel stood aside in a neutral manner. ROA.3096. Such action suggests a reasonable presumption that counsel acted strategically—especially where counsel later filed a motion to reinstate Tabler's state habeas proceeding, despite the deadline having passed for Tabler to file his state habeas application, in which counsel indicated that they disagreed with the decision to allow

Tabler to waive, even though they believed him to be competent to make the decision. ROA.3288–92.

For these reasons, Tabler has not established state habeas counsel abandoned him, and he thus fails to demonstrate cause external to him.

### 3. Tabler validly waived his state habeas process and state habeas counsel were not deficient in not challenging his waiver.

As an initial matter, under Texas law, there is no set standard for determining the validity for a waiver of state habeas proceedings in a capital case. *See Ex parte Gonzales*, 463 S.W.3d 508, 513 (Tex. Crim. App. 2015) (Yeary, J., dissenting) (acknowledging no apparent state law requirement that capital habeas applicant be competent to waive his "statutory right" to postconviction collateral attack). In *Gonzales*, the CCA reviewed a subsequent state habeas application under Article 11.071, § 5(a) to determine if it could be considered after the inmate had waived his state habeas proceedings; in its review, the court found that Gonzales had "waived his right to review of an initial Article 11.071 habeas application" after "applicant's expressed desire to waive habeas, the lack of any vacillation of that waiver appearing in the record, and applicant's failure to timely file an application." 463 S.W.3d at 509

(quoting *Ex parte Gonzales*, No. WR-50,541-03 (Tex. Crim. App. Nov. 10, 2010)).

Here, after the trial court held a hearing, the state courts concluded that Tabler's waiver of his state habeas proceeding was knowing and voluntary, that Tabler was competent to make this decision, and that "the failure to file [his] application for writ of habeas corpus is attributable to [Tabler]'s own continued insistence on foregoing any such remedy." ROA.3073–74, ROA.3092–93, ROA.3110–11. Tabler has not rebutted the presumption of correctness afforded these findings, nor can he, based on the state court record and his inability to meet the exceptions under § 2254(e)(2) to allow the Court to consider extra-record evidence.[5]

Keeping this in mind, as discussed above and below, Tabler cannot show cause under *Martinez* based on the theory that state habeas counsel failed to challenge Tabler's waiver of his state habeas process.

---

[5]    As briefed above in Part II(B), *Martinez Ramirez* bars the consideration of any new evidence introduced here that was not presented to the state court. *See Mullis*, 2022 WL 3700045 at *10 ("[*Martinez*] *Ramirez* very likely will reduce the evidence available to Mullis to prove his claim."). Even still, Tabler also does not rebut the presumption of correctness with the new evidence. As noted above, the Director cited in his answer to Tabler's exhibits to rebut Tabler's claims, and the court relied on those exhibits in support of its denial of habeas relief. *See generally* ROA.2093–2325 (Answer), ROA.7422–7507 (Opinion).

### a. Mental health issues are not a cause external to the petitioner.

Tabler contends that his waiver was not voluntary because of mental illness, delusional beliefs of persecution, and a history of vacillating. Pet'r Br. at 70–75. Consequently, he argues, that "involuntary" waiver constitutes cause that can excuse his procedural default. Tabler's arguments regarding mental illness are much like those presented in *Mullis v. Lumpkin*, where the Court noted that an "involuntary-waiver claim is foreclosed by precedent, because 'mental incompetency . . . is not a cause external to the petitioner.'" 2022 WL 3700045, at *7 (quoting *Gonzales v. Davis*, 924 F.3d 236 (5th Cir. 2019) (citing *Schneider v. McDaniel*, 674 F.3d 1144, 1154 (9th Cir. 2012) ("[A] pro se petitioner's mental condition cannot serve as cause for a procedural default . . . ."))). The Court also emphasized its holding in *Gonzales*, explaining that even if a petitioner's "claim sounds in voluntariness instead of competence, *Gonzales* still forecloses it," because "any 'mental impairment[ ]' is internal to the petitioner." *Mullis*, 2022 WL 3700045, at *7 (quoting *Gonzales*, 924 F.3d at 244 n.4.) Tabler's argument that his mental illness rendered him incompetent to waive is thus foreclosed from consideration.

35

Even still, the record undermines Tabler's argument.

> **b.    Counsel acted strategically in not challenging Tabler's competency to waive.**

Tabler fails to rebut the presumption that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690. The record supports the conclusion that counsel exercised a reasonable strategy. "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105.

Reconstruction of the circumstances of counsel's conduct is evaluated from "counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Further, a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011) (internal quotations and citation omitted). A defendant's "own statements or actions" informs the determination of the reasonableness of counsel's actions. *Id.*, at 691.

The record supports that counsel followed Tabler's instructions. Previously, the Court noted in its opinion in this case, "[n]either the

Supreme Court nor this court has ever held that a lawyer provides ineffective assistance by complying with the client's clear and unambiguous instructions not to present evidence." *Tabler*, 588 F. App'x at 306 (rejecting argument that habeas counsel abandoned Tabler) (citing *Wood v. Quarterman*, 491 F.3d 196, 203 (5th Cir. 2007)); *see Autry v. McKaskle*, 727 F.2d 358, 362–63 (5th Cir. 1984) (holding trial counsel was ethically obligated to comply with defendant's knowing directive not to present mitigating evidence nor required to seek a competency hearing before complying with that directive)). This finding is still valid.

Certainly, the record does not contain clear and unambiguous instructions from Tabler for counsel not to challenge his waiver, but counsel's statements at the beginning of the waiver hearing suggest that conclusion:

> The records show that we're – that Mr. Jasuta and I are here as counsel, and Mr. Table [sic] is here.
>
> And as I mentioned to Your Honor, off the record, we're here and do not announce ready because we do not intend to take a position one way or the other of what should happen today.

ROA.3096. The record reflects that Tabler spoke with state habeas counsel before the hearing, and that counsel believed that Tabler was competent. ROA.3104 (Tabler declined to talk with his attorneys "once

37

again," telling the trial court that "[t]here's nothing really more needs to be said."); ROA.3289 (motion to reinstate state habeas proceedings). Thus, counsels' presence and statement at the hearing indicate they represented their client's instructions on his waiver—regardless of their lack of support for his decision—in the manner they deemed most practical and ethical. *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018) (the decision to "forgo an appeal" is for the client) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)); *Perez v. Stephens*, 745 F.3d 174, 181 fn.12 (5th Cir. 2014) (citing Tex. Disciplinary R. Prof'l Conduct R. 1.02 (client controls general objectives and methods of representation), R.1.03 (requiring communication with and explanations to a client)).

Also, because Tabler was represented by counsel, he could not present anything to the court on his own behalf. *See Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995) (no right to hybrid representation on appeal, thus "nothing is presented for review" by a pro se appellant with appellate counsel). Accordingly, counsels' announcement gave Tabler the opportunity to enter his desired waiver, regardless of any possible disagreement counsel may have had with Tabler's instructions not to object, challenge his competency, or otherwise interfere with

entering his waiver. Indeed, the district court found "counsel complied with their client's desire to waive further appeals on his behalf" and, referencing this Court's prior opinion, "'[n]either the Supreme Court nor this court has ever held that a lawyer provides ineffective assistance by complying with the client's clear and unambiguous instructions not to present evidence.'" ROA.7440 (quoting *Tabler*, 588 F. App'x at 306 (citing (*Wood*, 491 F.3d at 203; *see also Autry*, 727 F.2d at 362–63 (holding trial counsel ethically obligated to comply with defendant's knowing directive not to present mitigating evidence nor required to seek a competency hearing before complying with that directive)).

The state court record supports the presumption that counsel acted within the wide range of professional assistance—namely, that counsel did not abandon Tabler and, instead, acted upon Tabler's instructions, evidenced by counsel's statements on the record and Tabler's affirmation in open court that he had spoken with counsel. And, while Tabler now urges he was not competent to enter his waiver of state habeas, he has failed to rebut with clear and convincing evidence from the state court record the presumption of correctness afforded the state court's finding of his competency.

Even if the Court "were to consider [competency] a mixed question of law and fact, such that § 2254(e)(1)'s presumption of correctness does not apply to the competency determination" and a de novo review is appropriate, *see Austin*, 876 F.3d at 781–82, Tabler still fails to demonstrate he was incompetent, given the state court record upon which the Court's determination must be made, his failure to develop the factual basis of his claim in the CCA, and his inability to meet the exceptions to excuse his failure.

Based on the state court record and the presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, the Court should reject Tabler's claim that state habeas counsel acted deficiently in not challenging their client's waiver.

> ### c. Tabler fails to show counsel had an obligation to challenge his competency as competency is not required for state habeas proceedings.

To the extent Tabler argues counsel were ineffective because they did not argue he was incompetent, *see* Pet'r Br. 70–75, 77–78, his claim fails. Indeed, in filing Tabler's motion to reinstate his habeas proceedings, counsel indicated their belief Tabler was competent.

ROA.3289. Further, Tabler fails to demonstrate his competency was an issue for consideration at his state habeas proceeding. And when "reconstruct[ing] the circumstances of counsel's challenged conduct," *Strickland*, 466 U.S. at 689, as reflected in the record, Tabler does not show state habeas counsel were ineffective for not challenging his competency.

The statute that provides the process for challenging a capital conviction and sentence of death is Texas Code of Criminal Procedure Article 11.071. That statute "does not expressly provide that an applicant can waive his right to pursue habeas relief, neither does the statute provide for automatic habeas review." *Ex parte Reynoso*, 257 S.W.3d 715, 720 fn.2 (Tex. Crim. App. 2008) (comparing to Tex. Code Crim. Proc. Art. 37.071 § 2(h) that provides automatic review of a death case on direct appeal). But the *Reynoso* court also recognized that it had previously "implicitly held that an applicant may 'waive' his right to habeas review;" it held that a waiver takes effect after the time to file expires. *Id*.

Regardless, there is no state law requiring competency to proceed with state habeas. *Ex parte Mines*, 26 S.W.3d 910, 915 (Tex. Crim. App. 2000) (There is "no justification in inferring a statutory requirement that

the applicant be mentally competent for habeas corpus proceedings in the way that a defendant must be mentally competent for trial."); *Butler v. Stephens*, 625 F. App'x 641, 659 (5th Cir. 2015) (noting CCA has not required a death-row inmate be competent to assist state habeas counsel but has "left open the possibility that a petitioner's alleged incompetency might be grounds for the untimely raising of an issue if it could not have been raised earlier because of that incompetency") (citing *Mines*, 26 S.W.3d at 911, 914, 916); *see Ex parte Gonzales*, 463 S.W.3d at 513 (Yeary, J., dissenting) (suggesting a capital habeas applicant does not need to be competent to waive his "statutory right" to post-conviction collateral attack).

Likewise, there is no clearly established federal law requiring a death-row inmate be competent to waive the state habeas process. Certainly, the Court has held an inquiry into "whether the defendant's mental capacity" to waive *federal* habeas proceedings is necessary where "the evidence raises a bona fide doubt as to his competency." *Mata*, 210 F.3d at 330. In such a case, the "breadth and depth of the competency inquiry" is shaped by the "extent and severity of the petitioner's history of mental health problems which have been brought to the court's

attention." *Id.* Indeed, more than a decade prior to *Mata*, the Court set out a three-part test for determining the competency of a federal habeas petitioner who wished to abandon his federal proceedings for challenging his state capital murder conviction and death sentence. *See Rumbaugh v. Procunier*, 753 F.2d 395, 398 (5th Cir. 1985). [6]

Tabler asks the Court to now apply *Rumbaugh* to his state court competency proceeding. Pet'r Br. at 59–60, 77–78. But there is no Supreme Court precedent that sets out *Rumbaugh*'s requirements for state habeas proceedings. This Court specifically noted in *Mullis* that *Rumbaugh* does not address the cause and prejudice standard, but "asked whether the petitioner was competent to withdraw his *federal* habeas petition." 2022 WL 3700045, at *8 (emphasis in original). Federalism prevents the interference of federal courts with state courts and state law—exactly what Tabler is requesting the Court to do in

---

[6]     Relying on *Rees v. Peyton,* 384 U.S. 312, 314 (1966), the *Rumbaugh* test requires the answer to three questions: 1) is the person suffering from mental disease or defect; 2) if so, does that disease or defect prevent him from understanding his legal position and options available to him; and 3) if the mental disease or defect does not prevent him from understanding his legal position and available options, does the disease or defect prevent him from making a rational choice among his options. 753 F.2d at 398.

applying *Rumbaugh* to determine the competency of a state habeas applicant where no such state law exists.

Further, this Court in *Mullis* drew a distinction between Mullis's competency argument versus voluntariness, and only applied *Rumbaugh* to the latter. 2022 WL 3700045, at *8. Indeed, this Court summarized Mullis's waiver argument as stemming from a "manifestation" of "mental illness and historic trauma," as Tabler argues here, and distilled Mullis's argument to "not hav[ing] the *ability* to resist waiving collateral review, a condition associated with competence[.]" 2022 WL 3700045, at *7 (citation omitted) (emphasis in original). As stated in *Mullis*, *Gonzales v. Davis*, 924 F.3d at 243, forecloses the argument that mental incompetency is a "cause external to the petitioner" that excuses a procedural default. *Id.* at *7 (quoting *Gonzales*, 924 F.3d at 243; and citing *Schneider*, 674 F.3d at 1154 ("[A] pro se petitioner's mental condition cannot serve as cause for a procedural default . . . .")). This Court should similarly decline to apply *Rumbaugh* to the facts in Tabler's case.   Also, in asserting that his wavering stance on waiving his state habeas proceedings[7] should

---

[7]     Tabler cites letters that are not part of the state court record presented to the CCA; as discussed in Part II(B), this evidence cannot be considered.

have signaled counsel to challenge his competency, Tabler overlooks other bases upon which counsel believed him to be competent that are not contained in the record. ROA.3289 (submitting to court that Tabler was competent at time of waiver); *see Michael v. Horn*, 459 F.3d 411, 426 (3d Cir. 2006) (Greenberg, J., concurring) ("[W]e should remember what every judge and attorney knows, i.e., litigation[,] whether criminal or civil[,] does not go forward in a straight line, and litigants whose competency cannot be questioned and, in fact, is not questioned[,] change their minds regarding critical issues during the course of litigation."). Further, case law indicates that an inquiry into competency requires more than counsels' opinion about their client's decisions. *Autry*, 727 F.2d at 363 ("[Counsel] was not ineffective in not seeking a competency hearing before abiding Autry's decision, absent a more substantial reason to suspect incompetence than the lawyer's view that Autry's decision was injurious to the case."); *see Wood*, 491 F.3d at 205 ("[C]ounsel's belief that the defendant's decision is ill-advised is not sufficient to trigger a duty to inquire into the defendant's competence.") (citing *Autry*, 727 F.2d at 363).

In any event, any prior vacillations Tabler had is superseded by the state court record that shows he remained steadfast between his letter of

August 11, 2008, in which he sought a waiver, ROA.3112, and his waiver hearing on September 30, 2008, ROA.3094. Tabler may have wavered about the wisdom of his decision in the years since he made it, but there is thus no indication that he "wavered" at the relevant time, much less that counsel was aware of it. Moreover, the state court record contains several letters in which Tabler repeats his waiver of "rights to all of [his] appeals" and/or his desire for an execution date to be set. ROA.3660 (November 25, 2008), 3658 (December 16, 2008), 3692 (December 29, 2008), 3689 (February 18, 2009), 3690 (February 22, 2009), 3683 (March 4, 2009), 3678 (March 12, 2009), 3673–74 (March 23, 2009), 3669–70 (March 30, 2009); *see also* ROA. 3680–81 (March 2, 2009) (expressing desire for execution date but considering "picking up [his] appeals"), 3676–77 (March 11, 2009) (expressing his concern about being transferred to a new unit, threatening suicide if that happens, and requesting an execution date). The state court record does not contain correspondence between Tabler and the trial court from the end of March until June 2009, when he requested his "appeals" be re-instated. ROA.3112.

The record does not support Tabler's contention that counsel knew or should have known Tabler was incompetent to waive state habeas proceedings. Without support, Tabler cannot demonstrate counsel acted deficiently by not challenging his competency. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (citing *id.*).

### D. Because Tabler's remaining arguments of state habeas counsels' ineffectiveness and IATC exceed the scope of the district court's COA, they cannot be considered.

Tabler argues that state habeas counsel abandoned Tabler due to several deficiencies. Pet'r Br. at 75–83. He also argues he was prejudiced because he was prevented from raising several meritorious IATC claims due to state habeas counsels' deficiencies. Pet'r Br. at 83. To the extent he relies on the above points to demonstrate state habeas counsel were ineffective, Tabler has failed to prove counsel were deficient; accordingly, these claims necessarily fail. But in pointing to his concurrently filed Application to Expand COA, Tabler acknowledges that additional IATC claims exceed the COA granted by the district court, *see* Pet'r Br. at 83, and therefore cannot be considered here. *Lackey v. Johnson*, 116 F.3d

47

149, 151 (5th Cir. 1997). Instead, these issues are best considered in his Application to Expand the COA, which will be addressed in the Director's response to Tabler's application.

### E.     Tabler also fails to demonstrate a reasonable probability that he would have prevailed on state habeas had counsel prevented him from waiving state habeas proceedings.

The effectiveness of state habeas counsel is measured by the familiar *Strickland* standard: whether the performance was objectively reasonable and whether any deficient performance prejudiced the proceeding—that is, whether there was a reasonable probability that the petitioner would have won on appeal. *Smith v. Robbins,* 528 U.S. 259, 285 (2000); *Moreno v. Dretke,* 450 F.3d 158, 168 (5th Cir. 2006). Again, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter,* 562 U.S. at 112.

Thus, even if Tabler could show that counsel was deficient for not challenging his competency to waive state habeas proceedings, Tabler must also demonstrate that he suffered prejudice. That is, if state habeas counsel had raised the claim addressed in Section III on state habeas review, that he would have been granted belief. *Segundo v. Davis,* 831 F.3d 345, 350–51 (5th Cir. 2016) (Concluding "Segundo failed to make

either showing required under *Martinez*: First, Segundo's IATC claim lacked merit—because he can demonstrate neither deficient performance nor prejudice under *Strickland*—and second, habeas counsel was not ineffective in failing to raise a meritless claim."). For the reasons discussed in the next section, Tabler fails to make this showing.

## III. Tabler's Claim of IATC for Failure to Object to Victim-Impact and Victim Character Testimony Is Without Merit.

Even if Tabler's procedural default could be excused, his underlying IATC claims would fail. Tabler argues that trial counsel was ineffective for failing to challenge extraneous victim impact and victim character evidence relating to Amanda Benefield and Tiffany Dotson, which he contends was inadmissible because these victims were not named in the indictment. Pet'r Br. at 84–89. Even if some of the cited evidence were objectionable on this ground, Tabler fails to demonstrate trial counsel acted deficiently in declining to raise an objection. Further, Tabler suffers no prejudice because the admission was harmless under state law, and not so unduly prejudicial that it rendered his trial fundamentally unfair. Thus, there is no reasonable probability that, but for counsel's failure to object, the result of the trial would have been different. *Strickland,* 466

U.S. at 694. Therefore, Tabler fails to demonstrate a violation of his constitutional rights.

Texas has defined "victim-impact" testimony as testimony "concerning the effect the victim's death will have on others, particularly the victim's family members." *Haley v. State*, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005) (citing *Mosley v. State*, 983 S.W.2d 249, 261 (Tex. Crim. App. 1998)). "Victim-character evidence," for its part, is "evidence concerning the good qualities of the victim." *Haley*, 173 S.W.3d at 517 (citing *Mosley*, 983 S.W.2d at 261; *Mathis v. State*, 67 S.W.3d 918, 928 (Tex. Crim. App. 2002)).

Victim impact and victim-character testimony is permissible in the punishment stage of a capital trial. *Payne v. Tennessee*, 501 U.S. 808, 825–27 (1991). In *Payne*, the Supreme Court held that the State has a legitimate interest in countering the individualization of the defendant by reminding the jury that the victim was also an individual whose death represents a unique loss to society and to the victim's family. *Id*. at 826–28. As a result, the Court left it to the States to devise procedures for admissibility, holding only that the admission of such evidence during the punishment phase violates the Constitution if the evidence "is so

unduly prejudicial that it renders the trial fundamentally unfair." *Id*. at 824–25.

Previously, the CCA held victim-impact and victim-character evidence that related to the murder victim of an unindicted extraneous offense was not relevant to the punishment phase. *Cantu v. State*, 939 S.W.2d 627, 636–38 (Tex. Crim. App. 1997). Regardless—and contrary to Tabler's argument, *see* Pet'r Br. at 85—the erroneous admission of victim-impact or victim-character evidence is subject to harmless error analysis. *Cantu,* 939 S.W.2d at 637–38. Indeed, in *Cantu* the CCA found the admission of similar evidence "harmless beyond a reasonable doubt," relying on the sparsity of the victim impact evidence in context of the entire punishment trial, the fact that it was not mentioned in closing arguments, and the State's focus on Cantu's behavior and his crime. 939 S.W.2d at 637–38. This analysis mirrors the district court's analysis in terms of prejudice. *See* ROA.7491 (testimony here amounted to sixteen out of 625 pages and was not mentioned during closing, while focus of the State's punishment phase was Tabler's crimes and behavior.)

## A.　Counsel was not deficient.

In Texas, the CCA permits the introduction of victim-impact and victim-character evidence, but has "caution[ed] that victim impact and character evidence may become unfairly prejudicial through sheer volume," because—although "not technically cumulative"—an "undue amount of this type of evidence" may be more prejudicial than probative. *Mosley*, 983 S.W.2d at 262–63 ("encourag[ing] trial courts to place appropriate limits upon the amount, kind, and source of victim impact and character evidence.").

Relying on *Cantu*, Tabler faults trial counsel first for not objecting to testimony from Amanda Benefield's grandmother, Carroll Vaughn, that Ms. Benefield had been violently raped by her stepfather and left to die, for which her stepfather was sentenced to life without parole. ROA.6557–68; Pet'r Br. at 85–86. Tabler also asserts counsel was deficient for failing to object to Ms. Vaughn's testimony, "And I think it's so sad the life she lived as [sic] a brutal death that she had." ROA.6561. None of this testimony, however, describes the impact Ms. Benefield's death had on others, nor is it evidence of the victim's good character or qualities. *See Mosley*, 983 S.W.2d at 261. Where impact evidence does not fit into either of these two definitions, the CCA has allowed admission.

*See Garcia v. State*, 126 S.W.3d 921, 928–29 (Tex. Crim. App. 2004) (records reflecting the extent of injuries suffered by a bystander to the defendant's shooting and indicating unnamed victim was calm and in good spirits, were admissible because they did not reveal anything about unnamed victim's good character or how third persons were affected by death of named victim); *Mathis*, 67 S.W.3d at 928 (testimony regarding the injuries and care of a bystander of a defendant's shooting spree was admissible). Although *Garcia* and *Mathis* involved victims of extraneous non-homicide offenses committed by the defendant, the underlying principle holds true; accordingly, because such evidence was not objectionable as victim-impact or victim-character evidence, trial counsel is not ineffective for failing to make a futile objection. *See Roberts v. Thaler*, 681 F.3d 597 (5th Cir. 2012).

Tabler also alleges trial counsel acted deficiently by not objecting to Ms. Vaughn's testimony that her granddaughter was "a happy girl, [s]he loved life . . . But I think all [she] ever really wanted was to [sic] love that she never had." ROA.6561; Pet'r Br. at 85–86. This was not objectionable on grounds of victim-impact evidence. Assuming this portion of Ms. Vaughn's testimony was victim-character evidence, the presumption is

that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690. Indeed, counsel had previously called into question Ms. Benefield's character,[8] and could have made the reasonable, strategic decision not to draw "undue attention" to these statements through an objection. *See Walker v. United States*, 433 F.2d 306, 307 (5th Cir. 1970) ("Since an objection may tend to emphasize a particular remark to an otherwise oblivious jury, the effect of objection may be more prejudicial than the original remarks of opposing counsel.").

And counsel had good reason not to object. Under Texas law, victim-impact testimony is admissible in rebuttal to attempted character assassination by the defense. *See Mosley*, 983 S.W.2d at 262 (in context of mitigation special issue, victim-impact and victim-character evidence admissible as rebuttal to defendant's mitigating evidence, and to show uniqueness of victim and the harm caused by defendant); *Smith v. State*, 919 S.W.2d 96, 102 (Tex. Crim. App. 1996)*, abrogated by Mosley*, *supra*,

---

[8] ROA.6515–17 (establishing Ms. Benefield lied about her age, had tattoos, and worked as an exotic dancer); ROA.6548–49 (calling attention to drug paraphernalia found and suggesting Ms. Dotson and Ms. Benefield abused drugs), 6553–54 (same); ROA.6597–6601 (toxicology reports on Ms. Dotson and Ms. Benefield tested positive for cocaine and indicated they likely drove under the influence of drugs), ROA.6603–04 (questioning impact of cocaine on "feeling or sensitivity").

(evidence of a deceased's good and peaceful character is admissible only if that character is placed in issue by the defendant). In either scenario, counsel did not act deficiently.

Tabler next argues that trial counsel failed to object to Tiffany Dotson's step-mother, Mary Dotson, telling the jury that Ms. Dotson was an "outgoing, fun-loving child;" "[s]he was a big animal lover;" "she loved us and looked up to us," and "[s]he was the love of our life. I called her the daughter of my heart." ROA.6568. Mary Dotson said Tiffany Dotson's death "was the nightmare that parents have when you let your children go out and . . . sometimes bad things happen and this is—that was the worst. It was horrible." ROA.6571. Finally, she stated that "[t]he church that we had her funeral at was packed. There was standing room only." ROA.6570.

While much of this testimony could be considered victim-impact or victim-character evidence, trial counsel could have strategically elected not to object so as not to call attention to this testimony or alienate the jury. *See Walker*, 433 F.2d at 307. Also, as with Ms. Benefield, defense counsel called into question Ms. Dotson's character upon cross-examination of numerous witnesses. *See* ROA.6548–49 (crack pipe

recovered from Ms. Dotson's purse at crime scene), ROA.6574 (suggesting Ms. Dotson went to live with her biological mother because she did not want to follow house rules), ROA.6597–99. Again, because victim-impact testimony may be admissible in rebuttal to this attempted character assassination, trial counsel had good reason not to object. *See Mosley*, 983 S.W.2d at 262; *Smith*, 919 S.W.2d at 102. Tabler has not rebutted the presumption of reasonableness afforded to trial counsels' judgments, *Strickland,* 466 U.S. at 690; he has therefore not shown counsel was deficient.

## B.    Counsels' actions did not prejudice Tabler.

The district court properly denied relief on this claim, focusing solely on the lack of prejudice from any alleged error by counsel. ROA.7490–91. Relying on *Cantu,* the court concluded that Tabler could not show prejudice resulting from any alleged deficiency by counsel because any error from the admission of Ms. Vaughn's or Ms. Dotson's testimony was harmless beyond a reasonable doubt. ROA.7490–91 (citing 939 S.W.2d at 637). Again, in keeping with the CCA's analysis in *Cantu,* the district court reasoned that the testimony of these witnesses amounted to only sixteen of 625 pages of testimony and was not

mentioned during closing argument, and the "overwhelming focus" of the State's punishment phase case was Tabler's commission of four premeditated murders, his bragging about the murders and taunting of authority, and his history of threatening law enforcement and their families. ROA.7491. For these reasons, the testimony "'was not so unduly prejudicial that it render[ed] the trial fundamentally unfair,'" and Tabler failed to show a reasonable probability of a different result, had counsel objected. ROA.7491 (citing *Payne,* 501 U.S. at 824–25).

Tabler challenges the district court's decision on two grounds. First, he argues that the court's "quantitative page weighing approach . . . discounted the heavy emotional clout of live testimony . . . [which] alone *could have* tipped the balance toward death." Pet'r Br. at 89 (emphasis added). To be sure, the number of pages is not the only consideration when weighing *Strickland* prejudice. But the district court made this observation as one of many record-based indications that the testimony did not prejudice Tabler. Speculation regarding the "clout" of this testimony does *not* demonstrate actual prejudice. Pet'r Br. at 89. Under *Strickland,* Tabler must show a "substantial," not just "conceivable,"

likelihood of a different result. *Richter*, 562 U.S. at 112; *Strickland*, at 466 U.S. at 693. He has not made that showing.

Tabler next argues that the district court failed to consider trial "counsel's overall performance," and that the "proper assessment of prejudice is cumulative." *Id.* That is not so. *Strickland*'s prejudice inquiry looks to prejudice caused by the deficient performance at issue—not other aspects of counsel's representation that are not themselves deficient. *See Hill v. Davis*, 781 F. App'x 277, 280–81 (5th Cir. 2019) ("The Supreme Court has never squarely held that the cumulative error doctrine governs ineffective assistance of counsel claims.") Because there is no need to examine both prongs under *Strickland* "if the defendant makes an insufficient showing on one," Tabler is not entitled to relief under *Strickland*. 466 U.S. at 697; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

Furthermore, the district court found no other instance of deficient performance by counsel to cumulatively consider with this claim.[9] ROA.7504–05. This Court has declined to aggregate non-constitutional

---

[9]    The district court concluded it need not address deficiency because Tabler failed to demonstrate prejudice. ROA.7490.

errors to form an independent claim on collateral review. Federal habeas relief for cumulative error is available only where (1) individual errors involved matters of constitutional dimension; (2) the errors are not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process." *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992); *see also Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995). This cumulative error doctrine presupposes that error must first be found before a court could consider the aggregate impact of that error. However, "[m]eritless claims or claims that are not prejudicial [or claims that are procedurally barred] cannot be cumulated." *Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005) (citing *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996)). As argued above, trial counsel's performance was not deficient, nor did Tabler suffer prejudice; consequently, he fails to demonstrate a substantial claim for relief and all of his claims are thus procedurally barred. Because he cannot prove any error by counsel in this case, there was nothing for the district court—or this Court—to cumulate.

Tabler ignores the remainder of the district court's analysis, founded on the CCA's guidance in *Cantu,* which thoroughly refutes any

allegation of prejudice arising from counsel's lack of objection. In *Cantu*, the CCA held that the erroneous admission of victim-impact testimony regarding the unindicted victim's character and activities was harmless beyond a reasonable doubt, "[g]iven the sparsity of the victim impact evidence, the fact that it was not mentioned by the State during arguments . . . , and the overwhelming focus during the punishment phase [was] on appellant's behavior and the circumstances of the offense[.]" 939 S.W.2d at 637–38. The CCA later repeated its caution of undue prejudice resulting from the "sheer volume" of this type of evidence. *Mosley*, 983 S.W.2d at 263.

Like *Cantu* and *Mosley*, any error in admitting this evidence here was harmless because the evidence was sparse. Ms. Vaughn's entire direct examination was only eight pages, ROA.6554–61, as was Mary Dotson's entire direct examination, ROA.6565–72. And neither witness's testimony was mentioned at all in the State's closing argument. *See* ROA.7045–46, 7066–90. Rather, the focus of the punishment phase was on Tabler's crimes, his threats against others, his bad behavior while in custody, and his troubled childhood and mental health issues. Any mention of Amanda Benefield and Tiffany Dotson in closing arguments

was (1) in relation to their murder by Tabler or (2) Tabler's attempt to mitigate his own culpability because Ms. Benefield and Ms. Dotson were using drugs. *See* ROA.7047, ROA.7072–73, ROA.7075, ROA.7084–86.

Furthermore, the State's case for future dangerousness was overwhelming. Again, Tabler was convicted of luring two men to an isolated area where he gunned them both down without provocation. Tabler confessed to the additional murders of two Teazers dancers, Amanda Benefield and Tiffany Dotson.[10] ROA.6668–69.  He bragged to his girlfriend Kim Geary about killing the girls because they were saying that he had murdered Rahoumani and Zayed. ROA.6639–41; *see also* ROA.6632. Both girls were murdered by the same gun used in the first murders.[11] ROA.6624–26; *see also* ROA.6595 (cause of death for both girls was multiple gunshot wounds).

In his statement, Tabler said he lured the girls to Stillhouse Hollow Lake with the promise of drugs.[12]  Once there, he accused them of talking

---

[10]    Ms. Benefield and Ms. Dotson were murdered on the same night Tabler confessed to killing Rahmouni and Zayed. *See* ROA.7177–78, ROA.6668–70.

[11]    Tabler told police that he had tossed the gun out of the car along the highway.  It was found where he said it would be. ROA.6663.

[12]    Both girls were found in possession of drug paraphernalia. ROA.6548–49. The autopsy revealed cocaine metabolites in both girls' systems. ROA.6597–99.

about his involvement in the murders of Rahoumani and Zayed, and then he shot them multiple times. ROA.6668–69; *see also* ROA.7177–78. There was also testimony that Tabler had called the sheriff's office taunting them about the new killings and promising to kill the rest of Teazers's employees. *See*, *e.g.*, ROA.6524 ("There's another one with five shots. And you need to close Teazers down or we're going to kill them all.  The ball's in your hands.").

The jury also heard that Tabler was an escape artist. While on parole in California, he was arrested for a parole violation, and in the back of his parole officer's car, he "start[ed] acting up. . . . Put his handcuffs in the front, so he's handcuffed in the front. Undid his seatbelt and started getting out of the car. . . . . He then jumped out of the vehicle." ROA.6410. After being picked up by local police and put into a patrol car, "he started kicking out windows. So they pulled him out, wrapped him. He started getting out of the wrap. Wrapped him again."[13] ROA.6411; *see also* ROA.6395–96, ROA.6398.

---

[13]    All of this was captured on video by the local police; the video was played for the jury.  *See* ROA.7223 (photocopy of case of State's Exhibit 70); *see* ROA.6397 (published).

Tabler also made numerous threats against members of law enforcement. Of his California parole officer, Tabler said he was "going to take care of [him] and [his] family." ROA.6412; *see also id.* at ROA.6413 (parole officer received a threatening phone call after Tabler had been extradited to Florida). When Tabler was suspected of committing a home invasion[14] in Michigan, the investigating police officer told the jury that, during a phone conversation, Tabler "got a little bit agitated when I started asking all kinds of questions, and finally he just said that if I didn't drop the investigation immediately that he would find out my full name, my social security number, my family members' names and somebody would get hurt." ROA.6425. And while in jail awaiting trial on the instant charges, a jailer overheard Tabler telling another inmate that "if he had a straight blade he would—all the officers were game. They had a brown shirt, they would be more or less a target." ROA.6437; *see* ROA.6439. One of the jailers specifically named by Tabler told the jury that Tabler had told her he would make her "watch what he did to my

---

[14]    In addition to second-degree home invasion, Tabler was charged with receiving stolen weapons, larceny of stolen weapons, and possession of handguns or weapons while in the commission of a felony. ROA.6422–23. He also stole a truck from a local dealership. ROA.6424.

children before he would kill me because it would be more torture for me."
ROA.6453. Finally, the jury was told that during one of the calls made to
the sheriff's office taunting them about the murders of Amanda Benefield
and Tiffany Dotson, Tabler said he knew there were undercover officers
at Teazers, but "they weren't shit and he could take them out one by one."
ROA.6499.

The jury also heard from the jail administrator, who said that
Tabler had been "a management issue from the day he came into jail."
ROA.6469; *see also id.* at ROA.6466–67 ("He came in displaying a certain
aggressive attitude towards everybody. He acted like he was the baddest
thing on the block. He said that he was affiliated with a gang. He made
a number of other comments and gestures and [we] put him in separation
for a period of time hoping that the attitudes and the conduct might
change."), ROA.6467 ("He always made threats. He's been disrespectful
to staff. He's covered his windows. He set off fire alarms. . . . He's
threatened a couple of inmates.").

Finally, in rebuttal to the defense's expert testimony, the State
presented Dr. Richard Coons who diagnosed Tabler as having Antisocial
Personality Disorder with some residual side effects of ADHD.

ROA.7000–01. Dr. Coons explained that Antisocial Personality Disorder is characterized by a disregard for the rights of others, deceit and manipulation in order to obtain profit or personal pleasure, a tendency to make decisions without regard to the consequences for themselves or others, and a lack of remorse. ROA.7001–04. Dr. Coons stated that people with this disorder do not have much of a conscience, and do what they do because they want to do it. The doctor told the jury, "It is hard to find anybody who fits the disorder better than [Tabler] does." ROA.7007–08.

When this aggravating evidence is weighed against the totality of the available mitigating evidence, there is no reasonable probability that the balance of aggravating and mitigating circumstances did not warrant death. *Wiggins v. Smith*, 539 U.S. 510, 522 (5th Cir. 2003); *Strickland*, 466 U.S. at 694–95.

For the above reasons, Petitioner fails to show that there was a reasonable probability that, but for counsels' failure to object, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir. 1985) ("If an error is shown to be harmless, then the error cannot satisfy the prejudice prong of *Strickland*."). Therefore, Tabler fails to demonstrate a

substantial claim for relief, and thus cannot demonstrate the necessary prejudice to overcome the procedural default of his claim, as required by *Martinez.*

## CONCLUSION

For the above reasons, the Director requests that this Court affirm the district court's denial of federal habeas relief.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Cara Hanna
CARA HANNA
Assistant Attorney General
State Bar No. 24047707
    *Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
cara.hanna@oag.texas.gov

*Attorneys for Respondent–Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief in Response complies with Federal Rule of Appellate Procedure 32(a) in that it contains 14,119 words. Microsoft Word, Century Schoolbook Font, 14 points.

s/ Cara Hanna
CARA HANNA
Assistant Attorney General

## ELECTRONIC CASE FILING CERTIFICATIONS

I do hereby certify that: (1) all required privacy redactions have been made; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus scanning program and is free of viruses.

s/ Cara Hanna
CARA HANNA
Assistant Attorney General

## CERTIFICATE OF SERVICE

I do hereby certify that on September 29, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic case-filing (ECF) system of the Court. The ECF system sent a "Notice of Electronic Filing" (NEF) to the following attorney of record, who consented in writing to accept the NEF as service of this document by electronic means:

Marcia Adele Widder
Georgia Resource Center
Suite 260
104 Marietta St., N.W.
Atlanta, GA 30303
marcy.widder@garesource.org

Claudia Van Wyk
Capital Punishment Clinic
American Civil Liberties Union
201 W. Main St., Suite 402
Durham, NC 27701
cvanwyk@aclu.org

Peter J. Walker
Federal Community Defender Office
for the Eastern District of Pennsylvania
The Curtis – Suite 545 West
601 Walnut Street
Philadelphia, PA 19106
peter_walker@fd.org

s/ Cara Hanna
CARA HANNA
Assistant Attorney General