

NATALIE D. THOMPSON
Assistant Solicitor General

(512) 936-1820
Natalie.Thompson@oag.texas.gov

July 14, 2023

**Via E-Filing**

Lyle W. Cayce
Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
600 S. Maestri Place, Suite 115
New Orleans, LA 70130-3408

**Re:** *Tabler v. Lumpkin*, No. 22-70001

Dear Mr. Cayce:

In *Mullis v. Lumpkin*, No. 21-70008, a panel of this Court held that "evidence outside the state record is admissible in *Martinez [v. Ryan*, 566 U.S. 1 (2012),] claims for the limited purpose of establishing an excuse for procedural default, even in the wake of *Ramirez* and *Twyford*." Slip Op. 7 (5th Cir. June 19, 2023) (citing *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), and *Shoop v. Twyford*, 142 S. Ct. 2037 (2022)). The Supreme Court "has signaled that *Martinez* hearings fall within [28 U.S.C.] § 2254(e)(2)'s ambit," *id.* at 5 n.3, but the panel reasoned this signal was dicta and did not abrogate circuit precedent under the rule of orderliness, *id.* at 5-7. The panel also recognized a circuit split on the issue but would not "tak[e] sides in the split, absent en banc reconsideration." *Id.* at 7 n.5. The *Mullis* panel ultimately concluded the petitioner lacked cause and prejudice. *Id.* at 7-13.

On July 3, Respondent petitioned for rehearing *en banc* in *Mullis*. No. 21-70008, ECF 162. The subject of that petition is implicated here, too. Should the full Court wish to address how section 2254(e)(2) applies to the *Martinez* cause-and-prejudice inquiry, the Court might order this case heard *en banc* on its own motion. Fed. R. App. P. 35(a).

The Court may affirm, however, without addressing this issue. Even with new evidence, Tabler lacks cause and prejudice. As in *Mullis*, counsel sought a psychological assessment, ROA.1289-93, the expert found Tabler competent, ROA.1311-12; ROA.1488-1504, and counsel did not contest competence at the

Page 2

waiver hearing, ROA.1329; ROA.3104-06. The state court found Tabler competent, ROA.3110-11, and Tabler cannot overcome AEDPA's presumption of correctness. Resp.Br.24-26. Where counsel relies on expert assessment and concludes his client is competent, counsel's duty is to "acquiesce to [the client's] desire to waive," *Mullis*, Slip Op. at 12, not to advocate incompetence. As to prejudice, Tabler's new evidence (*e.g.* ROA.1488-1504) does not show that mental illness "prevent[ed] him from understanding his legal position and the options available to him." *Id.* at 9; Resp.Br.40-47.

                                                        Respectfully submitted.

                                                        /s/ Natalie D. Thompson

                                                        Natalie D. Thompson
                                                        Assistant Solicitor General

**CERTIFICATE OF SERVICE**

On July 14, 2023, this letter was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Natalie D. Thompson
NATALIE D. THOMPSON

**CERTIFICATE OF COMPLIANCE**

This letter complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 28(j) because it contains 340 words, excluding the parts of the letter exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Natalie D. Thompson
NATALIE D. THOMPSON

# United States Court of Appeals
# for the Fifth Circuit

No. 21-70008

United States Court of Appeals
Fifth Circuit
**FILED**
June 19, 2023
Lyle W. Cayce
Clerk

Travis James Mullis,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, *Director,*
*Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:13-CV-121

---

Before Smith, Higginson, and Willett, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

We granted Travis Mullis a partial certificate of appealability ("COA") after the district court dismissed his federal habeas corpus petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In his state habeas proceedings, Mullis procedurally defaulted on his claim of ineffective assistance of trial counsel. He contends that the default stemmed from ineffective assistance of state *habeas* counsel and should therefore be excused. Because Mullis has not shown that habeas counsel was inef-

fective, he has not shown cause for the default. We therefore affirm the dismissal.

I.

We recited the relevant factual and procedural history in our opinion granting Mullis a partial COA. *See Mullis v. Lumpkin*, 47 F.4th 380, 383–87 (5th Cir. 2022). In summary, Mullis was sentenced to death for capital murder. After his conviction, and all the way through his federal habeas litigation, Mullis has flip-flopped time and time again about whether to waive his right to challenge his conviction and sentence—both directly and collaterally—and his desire to pursue those challenges *pro se*.

The *volte-face* at issue was Mullis's attempt to waive state collateral review and to act *pro se* in any future decisions regarding the filing of a habeas petition. Mullis was purportedly represented in his state habeas proceedings by attorneys in the Office of Capital Writs ("OCW"), including Brad Levenson. Although Mullis's habeas attorneys objected to his decision to waive collateral review, they did not object to a report by a psychiatrist, Dr. Victor Scarano, finding that Mullis was mentally competent to make it. The state court allowed Mullis "to act *pro se* regarding any decisions concerning waiver and/or filing a post-conviction writ of habeas corpus," although the court also allowed the OCW to "continue to investigate and prosecute" a writ subject to Mullis's consent (which he was withholding at the time).

Ultimately, Mullis did not timely file a state habeas petition. After his prospects in state court ended, he filed a habeas petition in federal district court, which dismissed, finding that he had procedurally defaulted on his claims. It also denied him a COA.

We in turn granted Mullis a COA in part, limited to the following questions: (1) Did Mullis's state habeas counsel render inadequate assistance by conceding that Mullis was competent to waive review? (2) Can the court

reach that conclusion based on evidence consistent with *Shinn v. Martinez Ramirez* (*Ramirez*), 142 S. Ct. 1718 (2022)? (3) If Mullis's state habeas counsel rendered inadequate assistance, was the inadequate assistance a cause external to Mullis?

## II.

We review the district court's factual findings for clear error and its legal conclusions *de novo*. *See Sanchez v. Davis*, 936 F.3d 300, 304 (5th Cir. 2019) (citing *Dorsey v. Stephens*, 720 F.3d 309, 314 (5th Cir. 2013)). Ineffective-assistance-of-counsel claims are mixed questions of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 342 (1980)). Additionally, we "may affirm on any ground supported by the record." *Sanchez*, 936 F.3d at 304 (quoting *Dorsey*, 720 F.3d at 314).

## III.

Mullis contends that his procedural default is excusable because the OCW failed fully to investigate his mental health despite having concerns about it. Had it done so, claims Mullis, there was a reasonable probability that the state court would not have found Mullis competent to waive habeas review and to proceed *pro se*. Thus, habeas counsel was ineffective. Mullis also asserts that any relevant ineffectiveness is a cause "external" to him, a necessary requirement for excusing procedural default.

We disagree. But before we reach the merits of Mullis's claims, we must answer a threshold question: what evidence we may consider.

### A.

Mullis and the state disagree about what evidence we are permitted to review. Mullis maintains that he is able to expand the record beyond the one developed in state court. He wants to introduce evidence from his so-called

"*Martinez* hearing" in district court, which is a hearing set to determine whether there was ineffective assistance of state habeas counsel—an excuse for procedural default under *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). The state counters that the relevant record comprises only the state trial and waiver records that satisfied the state's procedural requirements.

Given our precedent, Mullis is correct. Under AEDPA, federal district courts in habeas cases may not hold evidentiary hearings "[i]f the applicant has failed to develop the factual basis" of the "claim in [s]tate court proceedings." 28 U.S.C. § 2254(e)(2).[1] This case turns on what the term "claim" refers to. Does it refer to any claim made in the habeas context (including excuses for procedural default), or does it refer only to the underlying merits claim?

Rephrasing the question, does § 2254(e)(2) bar us from considering evidence that is outside of the state record when we are adjudicating a *Martinez* claim?

Although the parties focus on recent Supreme Court decisions, we must take a step back and consider the state of our circuit's law. Historically, this circuit has construed "claim" in the narrower sense. We have therefore declined to apply AEDPA's evidentiary bar to showings that a procedural default is excused. In *Segundo v. Davis*, 831 F.3d 345, 351 (5th Cir. 2016), for example, we held that evidentiary hearings on *Martinez* claims are permitted but not required. We therefore allowed the district court to consider an affidavit "presented for the first time in federal court" when determining whether the defendant's procedural default was excused. *Id.* at 350. In other cases, we have come to the same conclusion: Evidence outside the state

---

[1] Subject to two exceptions not relevant here. *See* 28 U.S.C. § 2254(e)(2)(A).

record may be considered when assessing a *Martinez* claim.[2]

We now turn to whether recent Supreme Court jurisprudence has abrogated that caselaw. In *Ramirez*, the Court held that *Martinez* does not permit federal courts "to dispense with § 2254(e)(2)'s narrow limits because a prisoner's state postconviction counsel negligently failed to develop the state-court record." 142 S. Ct. at 1728. But at issue in *Ramirez* was the use of evidence developed in a *Martinez* hearing to assess the defendant's underlying merits claim of ineffective assistance of *trial* counsel. *Id.* at 1729–30. *Shinn* did not reach—and indeed expressly reserved—resolution of the current situation: the use of evidence outside the state record in the *Martinez* context to establish cause and prejudice. *See id.* at 1738 (noting that while there are "good reasons to doubt" the proposition that *Martinez* hearings are not "hearing[s] on the claim" for § 2254(e)(2) purposes, there was no need for the Court to address it).[3]

One month later, the Court handed down *Shoop v. Twyford*, 142 S. Ct. 2037 (2022), which reaffirmed *Ramirez*. *Twyford* involved the transportation of the defendant to a hospital for medical testing, evidence that the defendant asserted would be helpful in obtaining habeas relief. *Id.* at 2041. He "asserted in passing that the desired evidence could 'plausibly' bear on the

---

[2] *See Charles v. Stephens*, 736 F.3d 380, 387 n.3 (5th Cir. 2013) (per curiam) ("Charles does not claim that his state habeas counsel was ineffective and, therefore, cannot rely on . . . *Trevino v. Thaler*, [569 U.S. 413] (2013), [affirming *Martinez*,] to argue that . . . [the] presentation of new evidence in federal court [is not barred]."); *Shore v. Davis*, 845 F.3d 627, 633 (5th Cir. 2017) (per curiam) ("Because Shore cannot effectively invoke *Trevino* and *Martinez*, . . . the new evidence on which Shore seeks to rely is not properly before this court.").

[3] In *dictum*, the Court has signaled that *Martinez* hearings fall within § 2254(e)(2)'s ambit. *See Ramirez*, 142 S. Ct. 1738–39. Though we acknowledge the importance of *dicta* in Supreme Court opinions, *see United States v. Becton*, 632 F.2d 1294, 1296 n.3 (5th Cir. 1980), our rule of orderliness still governs, as discussed *infra*.

question whether to excuse procedural default." *Id.* at 2046. His argument, however, was lacking in detail and failed to specify which defaulted claims he intended to bring. In holding that the district court erred in ordering the transportation because the defendant failed to show that any resulting evidence was admissible, the Court noted the following: "And in any event, this Court has already held that, if § 2254(e)(2) applies and the prisoner cannot meet the statute's standards for admitting new merits evidence, it serves no purpose to develop such evidence just to assess cause and prejudice." *Id.* (citing *Ramirez*, 142 S. Ct. at 1738).

That language reflects *Ramirez*'s suspicion of admitting evidence outside the state record to determine whether procedural default is excused.[4] It is, however, seemingly *dictum*.

More importantly, the Court's observation is directed at a different set of facts, where the defendant made no specific claims at all about how the proposed evidence would support his claim for habeas relief generally, and where the district court likewise failed to explain how the evidence would help the defendant's cause, given the application of § 2254(e)(2)'s evidentiary bar to his merits claim. *See Twyford*, 142 S. Ct. at 2045–46. In other words, the defendant's assertion that the testing would probe his *Martinez* claim appears to have been little more than a Hail Mary pass in his attempt to get the evidence admitted on his merits claim. Here, by contrast, the evidence Mullis seeks to admit undeniably pertains to his *Martinez* claim and would be used in that context alone.

Although the Supreme Court may, some day, extend AEDPA's evi-

---

[4] *See Ramirez*, 142 S. Ct. at 1738 ("While we agree that any such *Martinez* hearing would serve no purpose, that is a reason to dispense with *Martinez* hearings altogether, not to set § 2254(e)(2) aside.").

dentiary restrictions to the *Martinez* context (or, as it has suggested, dispense with *Martinez* hearings altogether), we may not violate our rule of orderliness to do so. *See United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014). In the absence of any on-point intervening law, whether in a statute or in a Supreme Court opinion, we must follow our narrow construction of "claim" in § 2254(e)(2). Accordingly, evidence outside the state record is admissible in *Martinez* claims for the limited purpose of establishing an excuse for procedural default, even in the wake of *Ramirez* and *Twyford*.[5]

B.

We now address the merits of Mullis's claims and conclude that he has not demonstrated cause that would excuse his procedural default. We therefore need not reach the questions of prejudice or externality.

Procedural default "prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (collecting cases). Cause exists where "some objective factor external to the defense" impeded a petitioner's efforts to comply with the relevant state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

One such factor is ineffective assistance of habeas counsel, at least in states—such as Texas—that functionally require ineffective-assistance-of-

---

[5] We acknowledge the circuit split on the question. *Compare Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723 (3d Cir. 2022) (holding that *Ramirez* did not abrogate the circuit's holding that AEDPA does not forbid factual development regarding excusing procedural default), *with Stokes v. Stirling*, 64 F.4th 131, 136 (4th Cir. 2023) (concluding that *Ramirez* prohibits the introduction of new evidence in support of *Martinez* claims). Our rule of orderliness precludes our taking sides in the split, absent en banc reconsideration.

*trial*-counsel claims to be brought in initial-review collateral proceedings. *See Martinez*, 566 U.S. at 9–12; *Trevino v. Thaler*, 569 U.S. 413, 417 (2013). In the relevant context, "the proper standard for attorney performance is that of reasonably effective assistance." *Washington*, 466 U.S. at 687 (citing *Trapnell v. United States*, 725 F.2d 149, 151–52 (2d Cir. 1983)). That standard is objective and tethered to "prevailing professional norms." *See id.* at 688.

Mullis's claims that his habeas attorneys were ineffective center on the state habeas court's determination that he was competent to waive state habeas review and habeas representation. In particular, Mullis contends that his counsel did not adequately investigate his mental health.

Mullis posits several deficiencies. The first is that although his habeas attorneys requested that Mullis be evaluated by a court-appointed mental-health expert, they failed to provide the expert with relevant mental-health records, trial transcripts, and other information that Mullis says were "critical" to the evaluation. The second is that habeas counsel failed to object to the report or challenge Mullis's waiver at the waiver hearing—the result of an "unethical promise" not to challenge Mullis's competence if an independent expert found him competent. We are persuaded by neither.

Texas law allows inmates to waive state habeas review. *Ex parte Reynoso*, 228 S.W.3d 163, 165 (Tex. Crim. App. 2007) (per curiam). It also permits them to waive habeas representation, provided that the waiver is "intelligent and voluntary."[6]

The Fifth Circuit has described the inquiry for postconviction compe-

---

[6] Tex. Code Crim. Proc. Ann. art. 11.071 § 2(a); *see also Ex Parte Gallo*, 448 S.W.3d 1, 5 n.23 (Tex. Crim. App. 2014). The competency inquiry differs from the knowing-and-voluntary inquiry. *Mullis*, 47 F.4th at 390 & n.21 (citing *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993)). Given Mullis's arguments, however, the distinction is irrelevant here. *See id.*

tency as follows: *First*, does the individual suffer from a mental disease, disorder, or defect? *Second*, if so, does that condition prevent him from understanding his legal position and the options available to him? *Third*, if not, does that condition nevertheless prevent him from making a rational choice among his options? *Mata v. Johnson*, 210 F.3d 324, 328 (5th Cir. 2000) (citing *Rumbaugh v. Procunier*, 753 F.2d 395, 398 (5th Cir. 1985)).

Considering the totality of the circumstances, Mullis's habeas counsel provided reasonably effective assistance. Leading up to the waiver hearing, Mullis maintained that he wanted to waive habeas review and dismiss his attorneys. His habeas attorneys were therefore caught between their duty to investigate Mullis's mental health, *see Profitt v. Waldron*, 831 F.2d 1245, 1248–49 (5th Cir. 1987), and their obligation to follow their client's desire to waive, *cf. McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018).

Accordingly, Mullis's habeas attorneys agreed that if an expert found Mullis competent, they would not challenge his waiver. To that end, they requested that the court order a mental-health evaluation. The court appointed Dr. Scarano. As part of his evaluation, Scarano considered various sources, including prison medical records, court transcripts (albeit not of the trial), and a video interview of Mullis conducted by a reporter. As part of the evaluation, Scarano interviewed Mullis and performed seven forensic psychiatric tests. He also considered Mullis's descriptions of his mental-health history, including his diagnosis of bipolar disorder, his suicidality as an adolescent, his past drug abuse, and his childhood sexual abuse. Scarano then explained, in a twenty-page report, his finding that Mullis was competent to waive his right to habeas review.

It is certainly true that habeas counsel could have provided more material to Scarano. Levenson did state that he spoke with Scarano before the evaluation and told him what the trial experts had said about Mullis's mental-

health history and about Mullis's fear of being raped if put into general population. But he could have provided more medical files and notes (to which he had access) prepared by mental-health experts who testified at Mullis's trial. And although the trial had not yet been transcribed, Levenson could have tried to postpone the waiver hearing until after the transcript was produced.

More concerningly, the habeas attorneys were surprised by the fact that, despite Mullis's mental-health history and diagnoses, Scarano did not diagnose him with any Axis I (mental-health and substance-abuse disorders) or Axis II (personality disorders and mental retardation) conditions. Scarano did, however, find that Mullis had "Features of Borderline Personality Disorder," an Axis II disorder. But the attorneys did not sit idle: Levenson called Scarano to discuss the "discrepancies," whereupon Scarano informed Levenson that "his findings were based upon his current observations" of Mullis at the time.

Given the context, the habeas attorneys were reasonable in not challenging Scarano's conclusions. *Segundo*, 831 F.3d at 352. It is true that the opinion of a court-appointed psychiatrist does not always exonerate counsel of any duty to investigate further. *Profitt*, 831 F.2d at 1249. But considering all the circumstances, *see Washington*, 466 U.S. at 691, Mullis's habeas attorneys did not have a duty to investigate more than they did. Worried about Mullis's competency, they sought a mental-health evaluation. And although they did not provide Scarano with every medical or other relevant record possible, Scarano was aware—both through Levenson and Mullis himself—of the contours of Mullis's diagnoses and mental-health history.[7]

---

[7] *Cf. Roberts v. Dretke*, 381 F.3d 491, 499 (5th Cir. 2004) ("There is no doubt that [defense counsel] neither collected [the defendant's] medical records nor did he contact

No. 21-70008

In brief, the evaluation ultimately concluded that Mullis was competent. Counsel followed up with Scarano with questions about his findings. That was enough.[8]

Mullis's contrary assertions are unavailing. He points, for example, to *Profitt*, 831 F.2d at 1249, where we held that trial counsel had a duty to investigate further the defendant's mental health even though a court-appointed doctor found that he was competent to stand trial. The report, however, was provided to counsel on the very day of the competency hearing and the day before the trial, hardly allowing counsel much time to review it thoroughly. Counsel was also on constructive notice that Profitt had been adjudicated insane a mere eight months before his trial. *Id.*

Here, by contrast, Mullis's habeas counsel had the opportunity to consider Scarano's report and to follow up with him about the results. And there was no similar adjudication of incompetence. To the contrary, Mullis endured his entire trial without being found legally incompetent by the court and, by the time of his habeas waiver, had already been found competent to waive his direct appeal—with the same judge presiding throughout.

Moreover, the court-appointed expert in *Profitt* also concluded that Profitt was sane at the time of his offense. On that basis, trial counsel decided not to plead an insanity defense—the only defense that counsel had intended to present. 831 F.2d at 1247. We noted that where there is "*no advantage* in the decision to bypass the insanity defense," a decision to abandon it

---

[his] treating physicians regarding [his] suicide ideation or his subsequent treatment for related depression . . . . However, it is clear from Dr. Arambula's report that the doctor was well aware of the fact that Roberts had previously had suicidal thoughts.").

[8] Several of Mullis's mental-health conditions, including "suicidality and depression[,] are not necessarily indications of incompetence." *Austin v. Davis*, 876 F.3d 757, 785 (5th Cir. 2017).

(especially based on faulty information) was not a "tactical" decision. *Id.* at 1249.

But Mullis's case is not in a trial posture, and the failure of Mullis's counsel to challenge his competence to waive habeas review is not analogous to a strategic or tactical choice regarding trial defenses. It was merely acquiescence to Mullis's wishes in light of a court-appointed expert's finding that Mullis was competent—wishes that are permissible given that defendants need not pursue habeas relief at all. In sum, *Profitt* is easily distinguishable.

Mullis's reliance on *Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990), is likewise misplaced. Bouchillon pleaded guilty of robbery but later petitioned for habeas corpus, claiming that he was both insane at the time of the offense and incompetent at the time of his plea. *Id.* at 590–91. As in *Profitt*, the only available defense appeared to be insanity. And although Bouchillon's trial counsel was aware of his history in mental institutions, counsel failed to investigate his mental health at all, not even seeking a psychiatric evaluation. *Id.* at 597. "To do no investigation at all on an issue that not only implicates the accused's only defense, but also his present competency, is not a tactical decision." *Id.*

Mullis's counsel, in stark contrast, did investigate by requesting a medical evaluation. And, again, his attorneys were not mounting a defense at trial but instead were determining whether they could acquiesce to Mullis's desire to waive habeas relief and dismiss them. *Bouchillon* is distinguishable for largely the same reasons *Profitt* is. *Cf. Green v. Johnson*, 116 F.3d 1115, 1123 (5th Cir. 1997) (distinguishing both *Profitt* and *Bouchillon* for similar reasons).

In conclusion, Mullis's habeas attorneys provided reasonably effective representation, even if their efforts were sometimes imperfect. The investigation into Mullis's competence was adequate, given the available

facts. *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994). And considering the procedural history and Scarano's findings, habeas counsel reasonably decided not to challenge Scarano's conclusion that Mullis was competent to waive his right to review.

The dismissal of Mullis's habeas petition is AFFIRMED.